## A. H. BELO & CO. v. FECHNER.
### No. 1957.

Court of Civil Appeals of Texas. Beaumont.
Oct. 19, 1931.

Motion for Rehearing Stricken Oct. 28, 1931.

Muse & Muse, of Dallas, for appellant.

Henry G. Wills, of Fort Worth, and W. B. Lewis, of Harlingen, for appellee.

HIGHTOWER, C. J.

On and prior to March 11, 1923, W. F. Fechner, appellee, and A. W. Steinle were resident citizens of Dallas county, Tex., and competitors in the city of Dallas in the nursery business, appellee trading under the name of Southwestern Nurseries and Steinle under the name of Steinle Nurseries. A. H. Belo & Co., appellant, long prior to the date mentioned, and at all times since that date, published and distributed in the city of Dallas and in the state of Texas generally The Dallas Morning News. On March 4th and March 11th, and probably on other dates prior to March 11, 1923, appellee advertised his business in the Dallas Morning News under the name of Fechner's Southwestern Nursery, saying in his advertisement, "Because we grow our own shrubbery we undersell other dealers." On March 11, 1923, Steinle, answering appellee's advertisement, carried in the Dallas Morning News the following advertisement:

"Closing Out Nursery Sale

"Cool weather prolonged planting season, still time to plant. We make no misrepresentations. Fechner's Southwestern Nurseries grows some plants but very plain that they undersell others because they grow their own plants is false and misleading and we will pay $100 to any charitable institution if our claim, that Fechner only grows a few varieties compared to the many he offers for sale is not a fact. To prove growing qualities of our stock will give one beautiful cape jasmine with $1 purchase or more.
"Steinle Nurseries
"Corner Ross and Masten."

On the 28th day of March, 1923, appellee filed this suit against appellant and Steinle, charging that the Steinle advertisement was libelous as to him and had caused him damage in the sum of $5,000. Subsequently he filed amended petitions eliminating Steinle as a defendant and praying for damages against appellant to his business and reputation in the sum of more than $60,000. Appellant answered by pleas in abatement, general and special demurrers, general denial, limitation, etc., and by specially pleading, as a complete answer to appellee's cause of action, the truth of the Steinle advertisement, that is, that appellee, under the statutes of Texas, was a "dealer" and "grower" of nursery stock and not merely a "grower," as appellee claimed to be. Appellant, in its brief, has thus summarized its answer on this issue: "(c) Pleaded the truth as a defense to the libel charged, in that the plaintiff alleged that 'Fechner's Southwestern Nurseries' advertised in said newspaper on March 11th, 1923, 'Because we grow our plants we undersell dealers,' classifying said nursery as a grower under the statutory definition of such terms (article 1698, Penal Code); that said advertisement was subject only to the meaning that the advertiser was a grower as contradistinguished from a dealer in nursery stock. That the Steinle advertisement was true; that in truth and in fact 'Fechner's Southwestern Nurseries' was a dealer as well as a grower, and so advertised in said newspaper on March 4th, 1923, namely, 'Because we grow our own shrubbery we undersell other dealers,' and again on March 10th, 1923, 'Because we grow our plants we undersell dealers.'"

The issues of fact made by the pleadings were found by the jury in appellee's favor and his damages assessed at $6,000. Appeal was duly prosecuted to the Dallas Court of Civil Appeals and transferred to our docket by the Supreme Court.

Appellant has many interesting propositions of reversible error, and also insists that the trial court erred in not sustaining, as a

matter of law, its plea in abatement and also in not sustaining this plea on the issues of fact. Appellant also insists that its plea of limitation was good, as a matter of law. However, we pretermit a discussion of these propositions because we think that appellant was entitled to an instructed verdict on the ground that it sustained, as a matter of law, its defense that the Steinle advertisement spoke the truth.

We quote from appellant's brief the following summary and analysis of the testimony on this issue:

"The plaintiff testified that he resumed the nursery business in 1919 or 1920, leased ten acres south of Dallas, bought what nursery stock was sold, except in 1920 did sell some that 'we grew ourselves.' Leased the Letot place in 1921, about four acres in cultivation there in 1923. 'Upon its acquisition we called ourselves Southwestern Nurseries, called it under that "trade name." Made no filing under assumed name law. My family is interested in this business with me, consisting of a wife and a daughter. I called the business Southwestern Nurseries.' 'I have never filed any paper showing who composed the Southwestern Nurseries. I did not think that was necessary. I did not have anybody interested with me in the nursery business in 1923 who was entitled to any part of the proceeds of the business except me and my family. Our place of business in 1923 was located at the corner of Cedar Springs and Routh Street in Dallas (nursery sales lot). We did buy some nursery stock in 1922. We also bought some nursery stock in 1923 and we sold some of the stock that we bought; we just bought them and sold them. I believe that all of the nursery stock on that lot was exposed for sale, and that it was the stock that was mentioned in this ad. (March 11th, 1923.) That was at the corner of Routh and Cedar Springs Streets. We opened that place on Routh and Cedar Springs about the 1st of November, 1922. In other words, we opened up that place of business in the fall of 1922, and we retained that place. We usually closed our sales yard about the 1st of May. We did buy some stock that we sold in 1924. It is a fact that the nursery selling season is very short. March is the main season. I do not know how much nursery stock I bought in 1922 and 1923. It would be hard to approximate the amount of nursery stock that I bought in those years. I do not know how much nursery stock I bought during the year 1923 that was sold without advertising. We bought some stock, and some of it I had to use for lining-out stock and some of it we used for sale. I have bought some of the stock that I put on the yards for sale but I do not know how much.'

"The defendant proved through the plaintiff and by his checks produced and offered in evidence that there was purchased by him nursery stock from various nurserymen, as shown by the dates of the checks, $230.00 of nursery stock during the period from October 3rd, 1922 to December 17th, 1922; and between the period from January 4th, 1923 to March 10th, 1923, nursery stock to the amount of $501.50; and on March 17th, 1923, nursery stock to the extent of $173.00, aggregating a purchase of nursery stock between said dates in the sum of $904.50.

"The plaintiff testified: 'In the nursery business we usually put our lining-out stock in the fall of the year to grow for another year, and then we do the selling. If we do not have certain kinds of lining-out stock on hand we get them from other nurseries.'

"Deducting the $93.25 checks for December, 1922, for nursery stock from the above $230.00 of checks for nursery stock, stated above between October 3rd and December 17th, 1922, would leave nursery stock for the stated usual lining out season in the sum of $136.75, if so used.

"The plaintiff testified: 'We bought most of our trees. We bought some stock, about $90.00, from the Griffing Nurseries at Beaumont. The stock that we bought from the Griffing Nurseries consisted of some extra sizes of evergreens that we did not have the sizes of and we got them from them and sold them. We did not have any on stock on March 11th, 1923 for sale. The fall of 1922 and the early season of 1923, which forms the selling season, we did buy some stock from the Terrell Nursery. We bought something like two hundred of their fruit trees. We had some of those on hand on March 11th, 1923, or along about that time. Those plants were included in the advertisement placed in the Dallas News on March 11th, 1923; they were included in what we had offered for sale. We bought some nursery stock at various times from various nurserymen, most of it lining-out stock and selling stock. I am talking about the fall of 1922 and during that season. We bought some trees from W. A. Scurry at Wills Point during that season, and possibly we did have some of them on hand on March 11, 1923. This morning in my testimony I gave the amount of stock bought from other nurseries, and from one of those nurseries I said that I bought some stock that went into the goods made up by this advertisement that was to go in this ad as our plants. That was the Houston Nursery. We bought some stock from them which was lining-out stock and some stock known as Queens Crown mentioned in the other ad there, which we also sold."

"W. F. Fechner testified in rebuttal that twenty-five per cent of the nursery stock from the Howard Nursery went into the nursery sale yards and about one-third of the nursery stock purchased from Stallings Nursery of Terrell went into his nursery for resale. He further testified that there was very little nursery stock purchased other than shown by the checks in evidence; that he may have bought some more stock in 1922 and 1923 but could not think of it 'right now.'

"The checks above referred to, issued for the purchase of nursery stock, are all signed 'Southwestern Nurseries, W. F. Fechner, Mgr.' save one on the bottom of page 113 of the Statement of Facts, whereon the word 'Mgr.' is omitted. The five letters introduced in evidence, written by W. F. Fechner to Howard's Nursery for nursery stock, dated respectively February 23rd, 1923, February 13, 1923, December 23rd, 1922, and January 11th, 1923, bear the printed heading 'Southwestern Nursery' thereon and all are signed as above stated 'Southwestern Nursery, W. F. Fechner, Mgr.'"

Appellee testified further that he grew the major part of the nursery stock sold by "Fechner's Southwestern Nurseries." The court also received, over appellant's objections, testimony of other nurserymen "that if 'Fechner's Southwestern Nurseries' grew ninety or ninety-five per cent of the nursery stock it sold, it would be a nursery grower as contradistinguished from a dealer."

Article 1698, Penal Code, defines the following terms: "Nursery Stock," "Nursery," "Being in the Nursery Business," "Dealer," and "Agent." This article is as follows:

"1. 'Nursery stock.'—The term 'Nursery stock' within the meaning of this law, shall include all fruit trees and vines, shade trees and forest trees, whether such shade or forest trees be especially grown for sale in a nursery, or taken from the forest and offered for sale; all scions, seedlings, roses, evergreens, shrubbery or ornamentals, also such greenhouse plants or propagation stock, all classes of berry plants, cut flowers taken from plants, bushes, shrubs or other trees growing in this State, which may be a medium for disseminating injurious insect pests and contagious diseases.

"2. 'Nursery.'—The term 'nursery' shall be construed to mean any grounds or premises on which nursery stock is grown, or exposed for sale. 'Being in the nursery business' applies to any individual, partnership or corporation which may either sell or grow, or both grow and sell, nursery stock, regardless of the variety or quantity of nursery stock sold or grown.

"3. 'Dealer' and 'agent.'—The term 'dealer' shall be construed to apply to any individual, partnership or corporation not growers of nursery stock, but who buy and sell nursery stock for the purpose of reselling and reshipping under their own name or title, independently of any control of those from whom they purchase. An 'agent of a nursery or dealer' shall be construed to apply to any individual, partnership or corporation selling nursery stock, either as being entirely under the control of the nursery or dealer with whom the nursery stock offered for barter and traffic originates, or some cooperative basis for handling nursery stock with the grower or dealer, as specified in this article. Any such agent shall have proper credentials from the dealer he represents or cooperates with, and failing in that, any such agent shall be classed as a dealer, and subject to such rules and regulations as may be adopted relative to them, and shall be amenable to the same penalties for violations of any provisions of this law."

The basis of appellee's libel is that the Steinle advertisement charged him with publishing an untruth when he advertised "Because we grow our plants we undersell dealers." It was the theory of appellee's case that he was not a "dealer" but was a "grower," and had the legal and moral right to advertise as such. We think appellee's own testimony brings him within the statutory definition of a dealer. Even if the terms "dealer" and "grower" are subject to definition by usage and custom, and that a grower is one who grows 90 to 95 per cent. of his stock, as testified to by the experts, yet, on appellee's own testimony, he must be classed as a dealer because he did not grow as much as 90 per cent. of his stock. On his testimony he purchased a very substantial portion of his stock, much in excess of the amount allowed him even by his expert witnesses.

It is our judgment that appellant fully established its defense that the Steinle advertisement was a truthful statement of the nature of appellee's business, and was, therefore, not libelous.

It follows that the judgment of the lower court in favor of appellee should be reversed and judgment here rendered in appellant's favor, and it is accordingly so ordered.