**FORT WORTH PRESS CO. et al. v. DAVIS.**

No. 13389.

Court of Civil Appeals of Texas. Fort Worth.

June 5, 1936.

Rehearing Denied Sept. 4, 1936.

Frank A. Ogilvie, of Fort Worth, for appellants.

L. J. Wardlaw and B. Y. Cummings, both of Fort Worth, and E. G. Senter, of Dallas, for appellee.

BROWN, Justice.

W. D. Davis, appellee, was mayor of the town of North Fort Worth, and sub-

sequent to the annexation of such territory to the city of Fort Worth was elected mayor of Fort Worth and served several terms.

In the summer of 1934, appellee was a candidate, offering himself for the nomination of county judge of Tarrant county in the Democratic primary. During the campaign, as is customary with candidates for public office, and as appellee had the right to do, he spoke, publicly and privately, and pointed with pardonable pride to the public improvements and municipal achievements which were brought about during his administrations of office as mayor of the city of Fort Worth. These improvements and achievements were pointed to by appellee and referred to as "Monuments" of his administrations.

The Fort Worth Press Company, one of the appellants, for many years has been publishing an evening paper in the city of Fort Worth, known as the "Fort Worth Press." This paper was opposed to the election of appellee as county judge of Tarrant county and undertook to print, and did print, several articles designated as "editorials," in which it attempted to give publicity to some of the public acts and achievements had and done during the administrations of appellee as mayor of the city of Fort Worth, which were designated "Monuments Bill Davis Doesn't Talk About." It also published a bit of doggerel addressed to appellee.

Appellee was defeated for the nomination and in March, 1935, brought suit against appellants, the Fort Worth Press, S. R. Sheldon, and Roscoe Fleming, and also against the E. W. Scripps Company, alleging that these appellants, by the publication of articles and editorials referred to and the bit of doggerel that was published, had libeled him. Sheldon was the editor of said newspaper and Fleming the assistant editor thereof. Fleming was the author of the editorials and the bit of verse complained about.

Appellee alleged that the editorials and the bit of verse were libelous, that they contained false statements, and that they were actuated by malice; and he sued for both actual and exemplary damages.

Appellants answered that they were not actuated by any malice; that the facts set forth in the editorials were substantially true.

The cause was tried to a jury and was submitted on special issues. The verdict returned was favorable to appellants as to all matters complained of, save and except the first editorial and article which referred to what is known as "the settling basin," which was attempted to be constructed during appellee's tenure of office as mayor as a part of the system built for a water supply for said city. The editorial known as "Monument No. 1" is as follows:

"Monuments Bill Davis Doesn't Talk About—No. 1

"An Editorial.

"By Now, you've probably heard Bill Davis talk.

"Charming fellow. Talks well.

"And Salesmanship. He could sell ice-packs to an Eskimo.

"But the job Bill Davis wants you to give him is that of County Judge. That's a big and responsible business job, having to do with spending $1,200,000 a year of taxpayers' money.

"That's a lot of money. The man who is entrusted with it ought to be a business man with a business record.

"Well, Bill has a record. He held a big business job once before, for eight years—that of Mayor of Fort Worth.

"How did he stack up ahandling the public's cash and conducting its affairs? He's talked some about that. He has told about the Monuments he left. But he has told only one side.

"In the interest of seeing that voters know something of both sides when they go to the polls, The Press has investigated Bill's record as Mayor. It presents a few of its findings—not all—in the form of four articles on 'Monuments Bill Davis Doesn't Talk About.' Below is described the first Monument. Others will follow:

"A Monument to Bill Davis' career as Mayor of Fort Worth, one of those he doesn't talk about in his campaign for County Judge—may be seen by any citizen of Tarrant County who cares to drive a few miles.

"And it's worth looking at. See the picture to the right.

"It looks like the Panama Canal of Tarrant County.

"It swallowed $80,000 of the money of Fort Worth taxpayers.

"And it's absolutely useless, and always was.

"It's the 'settling basin' carried almost to completion by the Bill Davis adminis-

tration as Mayor of Fort Worth at the time Lake Worth was planned.

"But it was abandoned, even before completion, and never used.

———◆———

"Drive out and look at it—before you vote.

"Go west on the White Settlement Road until you reach Higgs' Novel Nook, where you turn north on Roberts' Cutoff Road to Lake Worth.

"One-fourth mile after you turn north, look on the east side of the road and you will see two huge earth walls, about 250 feet apart, with a sheet of water 150 feet wide between them, running east as far as you can see.

"Those walls are the western end of Bill Davis' Settling Basin.

"They run east for half a mile or more.

"The 'basin' covers altogether, 14½ acres.

"What a monument!

"Look at it. You paid for it (tho you don't own it now).

"It was begun about the time the Lake Worth dam was being built.

"Why, no one could understand. Water and sanitary engineers said from the start that the thing was so impractical as to be absurd. If it 'settled' the water, they said, it would silt up so fast as to be useless in a few years.

"Public sentiment rose against the waste of money.

"Work was stopped.

"After the 'basin' was abandoned, it grew up in weeds.

"Bill Davis didn't spend all the money he might have, tho. He didn't build any way to get the water to the 'basin' from the lake.

———◆———

"Here's the aftermath, tho. Sometime ago a landowner bought the land on which the 'basin' is located. He tried to use it to store water for irrigation.

"And he found Bill Davis' 'settling basin' wouldn't even hold water. It runs thru the bottom and comes out miles down the river.

"As we said, these are monuments Bill Davis doesn't talk about. But now that he is asking for another big business job

handling $1,200,000 a year of taxpayers' money, don't you think he ought?

"Ask him.

"And Monday another monument Bill Davis doesn't talk about will be described in this space.

"'Just a little trouble over a camp site' says Bill.

"But that isn't what the judge said.

"Above is a view of the 'settling basin' about 250 feet wide from bank crest to bank crest, and 150 feet wide at the water line, which a Bill Davis City administration built to 'settle' water from Lake Worth at a cost of $80,000. It is half a mile long. You can see it winding away into the distance in the photograph. It was so impractical it was abandoned before final completion."

This was incorporated in paragraph 5 of appellee's original petition, and the issues submitted concerning this editorial and the favorable answers thereto are as follows:

"1. Do you find from a preponderance of the evidence that the statements made by the defendants, as set forth in paragraph 5 of plaintiff's original petition, pertaining to the settling basin, are substantially true? Answer: No.

"2. Do you find from a preponderance of the evidence that the statements made by defendants as set forth in paragraph 5 of plaintiff's original petition, pertaining to the settling basin, constitute a reasonable and fair comment or criticism of the official acts of plaintiff? Answer: No.

"3. Do you find from a preponderance of the evidence that the statements made by the defendants as set forth in paragraph 5 of plaintiff's original petition pertaining to the settling basin, were published in good faith, without malice and upon probable grounds? Answer: No.

"4. Do you find from a preponderance of the evidence that the statements made by the defendants as set forth in paragraph 5 of plaintiff's original petition, pertaining to the settling basin, constitutes a reasonable and fair comment or criticism of matters of public concern? Answer: No. * * *

"12. Do you find from a preponderance of the evidence that the statements made by the defendants, as set forth in paragraph 5 of plaintiff's original petition, concerning the settling basin, con-

stitutes libel as that term has been defined? Answer: Yes. * * *

"16. Did the publication of either of said articles result in injury to the plaintiff, W. D. Davis, either to his reputation or feelings, or both? Answer: Yes.

"What sum of money, if any, if paid now in cash will fairly and reasonably compensate the plaintiff for the injury, if any, he may have sustained, as may be shown by the evidence, if any, as the direct and proximate result of the publication of either of said articles, taking into consideration the injury, if any, to the reputation and feelings of plaintiff? State such sum, if any, in dollars and cents. Answer: $1000.00.

"18. Do you find from a preponderance of the evidence that the defendants were guilty of actual malice, as that term is defined herein, in publishing and circulating the statements as set forth in paragraph 5 of plaintiff's original petition? Answer: Yes.

"What amount of money, if any, do you find as exemplary damages? Answer in dollars and cents. Answer: $1631.25."

The defendant E. W. Scripps Company was peremptorily discharged by proper instructions by the trial court. The verdict having been received by the trial court, the appellants and appellee moved for judgment based on such verdict.

Appellants' theory is that the undisputed record shows that the facts and statements made in such editorial concerning the settling basin are substantially true.

Judgment having been rendered for appellee against the three appellants named, awarding appellee the sum of $1,000 actual damages and $1,631.25 exemplary damages, motion for a new trial was duly made, and, upon its being overruled, the cause was properly brought before us for review.

There are fifteen assignments of error, supported by fifteen propositions; but taking the view that we do of this case from the record, we do not consider it necessary to discuss all of the assignments of error.

The first assignment of error asserts that the court erred in not granting appellants' motion for judgment, notwithstanding the verdict, for the reason that material allegations of the "settling basin" article are substantially true. The jury having found against appellee on all other matters complained about, if it can be said that the facts and statements set forth in the settling basin article are substantially true, the first assignment of error should be sustained.

The complaint made by appellee is that the article or editorial referred to charges a waste of the taxpayers' money in the sum of $80,000 expended in attempting to construct the settling basin, when no such sum was expended. The city secretary, Henry Keller, testified that he had found from the minutes of the city commission estimates numbered "1 to 5," inclusive, showing payments made on the settling basin which aggregated the sum of $17,575.94. He testified that he could not find estimates numbered "6, 7, and 8," which were paid.

As pointed out above, appellee has referred to the improvements and achievements accomplished under his administrations as mayor as evidences of his ability and fitness to acceptably occupy the office of county judge of Tarrant county. He was thus claiming the credit for these improvements and achievements which were had and done during the time that he was mayor of the city of Fort Worth.

Appellants were attempting to show that certain improvements were undertaken and things were done officially and in the name of the city of Fort Worth which were not beneficial to the city's interest during appellee's tenure of office, and these were referred to as the "monuments" appellee does not talk about.

Analyzing the settling basin editorial, we find that all of the statements therein are shown by the evidence to be true, excepting the statement "it swallowed $80,000 of the money of Fort Worth taxpayers." What is the charge then that is being made? A waste of the taxpayers' money in the settling basin project. There is no more opprobrium attached to or charged by saying that $80,000 of the taxpayers' money was wasted in this project than there would be should the charge have been made that $17,500 of the taxpayers' money was wasted. If one were charged in an article with embezzling $80,000 or with a swindle involving such sum, and because of the publication of such purported facts, a libel suit should be brought, a complete answer to the cause of action is that the proof indisputably showed an embezzlement of or a swindle in the sum of $17,500. That this

is the law, we do not believe any one will question.

Following are a few of the many cases which we believe control the case at bar: Quaid v. Tipton, 21 Tex.Civ.App. 131, 51 S.W. 264; Caylor v. Nunn (Tex.Civ.App.) 235 S.W. 264; Express Publishing Co. v. Keeran (Tex.Com.App.) 284 S.W. 913; Enterprise Co. v. Wheat (Tex.Civ.App.) 290 S.W. 212; Enterprise Co. v. Glenn (Tex.Civ.App.) 290 S.W. 806; Ray v. Times Pub. Co. (Tex.Com.App.) 12 S.W. (2d) 165; Belo & Co. v. Fechner (Tex.Civ. App.) 42 S.W.(2d) 641; Lundberg v. Brownsville Herald Pub. Co. (Tex.Civ. App.) 66 S.W.(2d) 375.

The statements found in the article complained about come squarely within the provisions of article 5432, Rev.Civ.Statutes, as amended by Acts 1927, c. 80, § 2 (Vernon's Ann.Civ.St. art. 5432), and the publication thereof is "deemed privileged" by us.

The judgment of the trial court is reversed, and judgment is here rendered for appellants.