FIRST STATE BANK OF CORPUS
CHRISTI et al., Appellant,

v.

Arthur E. AKE, Appellee.

No. 1656.

Court of Civil Appeals of Texas,
Corpus Christi.

June 12, 1980.

Rehearing Denied Aug. 29, 1980.
Second Rehearing Denied Sept. 25, 1980.

Richard A. Hall, Gary, Thomasson, Hall & Marks, Corpus Christi, Hugh Rice Kelly, Richard K. Willard, Baker & Botts, Houston, for appellants.

Russell H. McMains, William R. Edwards, Edwards & Perry, Corpus Christi, for appellee.

## OPINION ON MOTION FOR REHEARING

NYE, Chief Justice.

Our original opinion is withdrawn and this opinion is substituted therefore. This libel case involves an appeal by First State Bank of Corpus Christi and Roger Mize, Chairman of the Board of Directors of the Bank, from a judgment in favor of the plaintiff, Arthur E. Ake. Ake brought suit upon an allegedly libelous statement made by the Bank in a fidelity bond claim that was signed and sworn to by Mize as Chairman of the Board of Directors. The jury found that the statement in question was false when it was made and that Mize, the Chairman, believed it to be false when he signed the claim form. Publication of the allegedly libelous statement was established as a matter of law. Judgment based on the jury verdict was rendered in favor of Ake for $450,000.00.

Ake was president of the First State Bank from 1968 until 1970, when he was discharged. He was hired initially for the position of President by defendant Mize, who was a member of the Board of Directors at that time. His starting salary was $20,000.00, which increased steadily until it was $25,000.00 in July, 1970. In addition, Ake received other remunerations, including hospital benefits, a car and expenses, membership in the Country Club, dividends on 1,000 shares of stock, Board of Directors' fees and a bonus for each year in which he was employed as Bank President.

In a little over two years during his tenure as chief executive officer of the Bank, the Bank's earnings more than doubled and its dividends more than tripled. The transactions which were the subject of the fidelity bond claim against the plaintiff concerned Allied Roofing Company, a customer of the Bank. One group of transactions involved a series of loans or loan renewals which Ake was involved in making to Allied, some of which were in excess of Ake's lending authority under the circumstances. The other group of transactions involved the withholding of some of Allied's insufficient checks for reprocessing, which had the effect of extending additional credit to Allied, again in excess of Ake's lending authority under the circumstances. The money owed by Allied as a result of these two groups of transactions was ultimately written off as a loss at the express direction of the Board of Directors.

In June and July of 1970, the F.D.I.C. conducted a routine examination of the Bank at which time the examiner discovered that Ake had illegally hypothecated his Bank stock in violation of an oath he took as President. Ake admitted this transgression and was told to submit his resignation which he did that day. Shortly thereafter the Bank filed a fidelity bond claim against Ake specifically claiming losses totaling $41,456.05 resulting from the dishonesty of Ake.

Ake had never been informed of the Bank's action in filing of the fidelity bond claim. He found out about it sometime later when he specifically questioned one of the Board members. In the meantime, he attempted to obtain work from a number of banking institutions, all of which turned him down. Subsequently he was able to obtain employment at the Parkdale State Bank as a loan officer in December, 1971, at a considerable reduction in pay. Ake worked approximately 5 years for Parkdale State Bank until April, 1976, where he was discharged because of an improper business relationship with a customer. He sought employment with 10 or 15 other banks thereafter without success. At the time of trial, he was selling automobiles where he was making between $700.00 and $800.00 per month.

The defendants' sole contention as to the motivation for the filing of the fidelity bond claim in question was, according to them, that a certain deceased bank examiner had allegedly instructed them to do so. Sometime after the filing of the bond claim, the Bank sent a letter to the insurance carrier withdrawing its claim for the loan losses portion because it had expressly ratified Ake's action regarding these losses. The balance of the claim was ultimately denied. Chairman Mize conceded during trial that there was no distinction whatsoever between the action of the Board in ratifying Ake's action in regard to the loans and the recirculation of the checks in question since all had been charged off by the Bank in like manner at the same Board meeting.

The defendants' appeal consists of 17 points of error which cover three major contentions. First, points 1 through 4 question the manner in which the primary libel issue was submitted to the jury. Second, points 5 through 7 question whether the statement set out in the bond claim was legally actionable. Third, points 8 through 17 attack the jury's award of damages and the trial court's action in excluding certain evidence in mitigation of the damages.

The alleged libel was contained in a proof of loss form supplied to the Bank by its insurance carrier. In one of the blanks, the Bank typed in "loans made unauthorized by Directors resulting in a total loss of $16,940.51." At another place, the bank stated: "checks held without authorization of Directors, resulting in a loss of $24,515.54." "Total loss ... $41,456.05." At the bottom of the form appeared the certification which stated: "I hereby certify that the above statement is true and correct in every respect; that this company sustained a loss in the amount above stated through the dishonesty of Arthur E. Ake employed as President." The form was subscribed and sworn to by Mize as Chairman of the Board of Directors. The claim form is reproduced from the original court exhibit "B" below (see appendix).

The primary libel issue (question No. 1) submitted to the jury inquired:

"Do you find that the statement contained in the fidelity bond claim to the effect that First State Bank of Corpus Christi, Texas, sustained a loss in the amount of $41,454.05 'through the dishonesty of Arthur E. Ake' was false when it was made?

Answer: 'Yes' or 'No.'

Answer: '*Yes.*' "

In points of error 5, 6 and 7 the defendants argue that the word "dishonesty" was an opinion based upon true facts and that the trial court's refusal to submit an issue concerning whether the word "dishonesty" was an actionable opinion was error. In this regard the defendants rely upon Section 566 of the Restatement of Torts which provides:

"A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."

The defendants characterized the statement in the bond claim that the Bank lost money through the dishonesty of Ake as an opinion based upon disclosed facts; i. e., the allegations that Ake made unauthorized loans and

withheld checks without authorization. According to the defendants these statements contained in the bond claim were true. We disagree.

■ The inquiry in Special Question No. 1 focused on the dishonesty of plaintiff Ake. The very nature of a claim on a fidelity bond is dishonesty since the fidelity bond only covers losses through dishonest or fraudulent acts of employees. Mize testified that he knew of the nature of a fidelity bond claim at the time he filed it. Mr. Mize conceded that there was no evidence and no basis for him to assert that Mr. Ake had ever been guilty of any dishonest acts with regard to the Allied Roofing Company or any other transaction. The Bank withdrew a portion of the bond claim and the balance of the claim was denied. No further pursuit was had by the Bank thereafter. The evidence concerning Ake's honesty was in dispute. Attributing the losses suffered by the Bank to the dishonesty of Mr. Ake necessarily involved the lack of moral turpitude. *Great American Insurance Co. v. Langdeau*, 379 S.W.2d 62 (Tex.Sup.1964). The accusation (of dishonesty) in a fidelity bond claim such as the statement in the case at bar is not merely an expression of an opinion, it was a statement of fact which generally must be proved under rules of evidence like any other fact. *Great American Insurance Co. v. Langdeau*, supra; *Downer v. Amalgamated Meat Cutter, Etc.*, 550 S.W.2d 744 (Tex.Civ.App.–Dallas 1977, writ ref'd n. r. e.). This the appellants failed to do. These points of error are overruled.

The defendants argue next that Special Issue No. 1 which asked whether the statement that the Bank lost $41,454.05 through the dishonesty of Ake was false when made, unfairly and prejudicially took the statement in Special Issue No. 1 out of context. Defendants contend that the jury should have been instructed to answer a fairly submitted special issue in light of the context of the bond claim and on attendant statements and circumstances and in light of the substantial truth doctrine.

■ In *Times Publishing Co. v. Ray*, 1 S.W.2d 471 (Tex.Civ.App.–Eastland 1928) aff'd 12 S.W.2d 165 (Tex.Com.App.1929), it was held that a party should not be permitted to carve out isolated words or phrases and have them considered without reference to their settings. Applying this rule to the case at bar, defendants claim that Special Issue No. 1 unduly focused upon the printed language of the form found at the bottom of the fidelity bond claim form and erroneously ignored the remainder of the form. The excluded portion of the form, however, constituted mere evidentiary matter which should not have been submitted to the jury. The only ultimate fact in this case was whether the allegedly libelous statement that Ake was dishonest was "true" or "false". This is exactly what Special Issue No. 1 asked: We hold that Special Issue No. 1 did not take the statement in question out of context. Likewise, the court did not abuse its discretion in refusing to submit defendant's requested instruction concerning context of the statement in question.

Another reason for holding that Special Issue No. 1 did not take the statement in question out of context and that the court did not err in submitting defendants' requested instruction concerning context of the statement in question is based upon the nature of a fidelity bond claim. Unlike a newspaper article, such as the one involved in *Ray*, a fidelity bond claim's context is not open–ended. While newspaper articles communicate an infinite amount of information dealing with a myriad of meanings, fidelity bond claims are essentially one dimensional–they claim that someone has been dishonest or fraudulent and that someone else has lost money or other valuable property as a result. Hence, the fidelity bond claim in the case at bar was either true or false–either Ake was dishonest or he was not. We hold that it was impossible for the jury to take the accusation of dishonesty out of context in this particular case.

■ Regarding the substantial truth doctrine, defendants' argument is that the

inclusion in special issue no. 1 of the $41,-454.05 figure in effect caused the wrong question to be asked of the jury. By including the dollar amount, the defendants contend, the jury was prejudicially given the impression that the statement in question was false if the dollar amount was not literally correct, an impression which admittedly is at odds with the substantial truth doctrine, citing *Downer v. Amalgamated Meatcutters and Butchers Workmen*, supra and *Fort Worth Press Co. v. Davis*, 96 S.W.2d 416 (Tex.Civ.App.–Fort Worth 1936, writ ref'd). We disagree, however, with the assumption that the inclusion of the $41,-454.05 figure reasonably created such an impression. Instead, we are of the opinion that the placement of quotation marks around the words relating to Ake's alleged dishonesty in the special issue was sufficient to focus the jury's attention on the true inquiry; i. e., the veracity of the claim that Ake was dishonest or not. In addition, we hold that the court did not err in refusing to submit an instruction to the effect that the jury should not award damages for any statements which were substantially true. In *First State Bank & Trust Co. of Edinburg v. George*, 519 S.W.2d 198 (Tex. Civ.App.–Corpus Christi 1975, writ ref'd n. r. e.), we said:

> "The only function of an explanatory instruction in the charge is to aid and assist the jury in answering the issues submitted. The only requirement to be observed is that the trial court must give definitions of legal and other technical terms. Nothing else, however interesting, or, indeed, however relevant to the case in general, which does not aid the jury in answering the issue, is required. The trial court has considerably more discretion in submitting instructions in this area than it has in submitting special issues." (citations omitted)

Similar to the circumstances in that case, the requested instruction in the case at bar concerning the substantial truth doctrine does not refer to any particular issue or term used in the charge; it could only be considered by the jury as applying to the case as a whole; it was not necessary to assist the jury in properly answering any issue. None of the special issues which were submitted contained any legal or technical terms. In any event, if there was any error in the submission of this issue, it was harmless because the appellants have not demonstrated that it caused or probably caused the rendition of an improper verdict. Rule 434 T.R.C.P. Points 1 through 4 are overruled.

Next, the defendants contend that the trial court erred in refusing their request for instructions to the effect that the jury should not consider those damages resulting from the publication by Ake himself of the defamatory matter to others. In this regard, they contend that Ake voluntarily disclosed information regarding the bond claim filed by the defendant Bank to prospective employers and that this in and of itself contributed to his damages. The defendants cite *Lyle v. Waddle*, 144 Tex. 90, 188 S.W.2d 770 (1945), which holds that a plaintiff cannot recover for injuries sustained by reason of a publication which he authorized, invited or procured.

One who communicates defamatory matter directly to the defamed person, who himself communicates it to a third party, has not published the matter to the third person if there are no other circumstances. If the circumstances indicated that communication to a third party is likely, however, a publication may properly be held to have occurred. Restatement (Second) of Torts § 577, comment m (1977). Likewise, if a reasonable person would recognize that an act creates an unreasonable risk that the defamatory matter will be communicated to a third party, the conduct becomes a negligent communication, which amounts to a publication just as effectively as an intentional communication. Restatement (Second) of Torts § 577, comment k (1977).

In the case at bar, both Mr. Mize and another witness, who was a banker, testified that Ake would have been remiss indeed not to have owned up to the fact that a bond claim had been filed. As a

former banker, he held a bondable position. It would have been a natural inquiry by the banking profession, if not admitted, to have asked Ake sometime, either in the employment interview or in an application for employment, whether a bond claim had ever been filed against him. Under the circumstances, therefore, the rule announced in *Lyle* is not applicable and the trial court did not err in refusing to give the explanatory instruction. *First State Bank & Trust Co. of Edinburg v. George*, supra. This is especially the case since the mere filing of this fidelity bond claim, which was surely to be brought out during the application and interviewing process, constituted defamation *per se. See Sanders v. Hall*, 55 S.W. 594 (Tex.Civ.App.–1899, writ ref'd) and *Allen v. Earnest*, 145 S.W. 1101 (Tex.Civ.App.–Dallas 1912, no writ). Point of error number 10 is overruled.

■ In points 11 through 16 defendants attack the award of actual and punitive damages to Ake. According to defendants, the evidence is legally and factually insufficient to support the recovery of $150,000.00 actual and $300,000.00 punitive damages and we should, in any event, order a remittitur on the grounds that the amount of damages is grossly excessive. We have held heretofore that the filing of a fidelity bond claim such as the one here presented, charging Ake with dishonesty, was libelous per se. The jury found malice which has not been attacked by insufficient evidence on appeal. Even though extensive damages were proved in this case, the law presumes the existence of some actual damages in cases involving libel per se. *Bayoud v. Sigler*, 555 S.W.2d 913 (Tex.Civ.App.–Beaumont 1977, writ dism'd); *Whalen v. Weaver*, 464 S.W.2d 176 (Tex.Civ.App.–Houston [1st Dist.] 1970, writ ref'd n. r. e.); *Hornby v. Hunter*, 385 S.W.2d 473 (Tex.Civ.App.–Corpus Christi 1964, no writ); *Davila v. Caller Times Publishing Co.*, 311 S.W.2d 945 (Tex.Civ.App.–San Antonio 1958, no writ). The amount of damages in a defamation suit is left largely to the discretion of the jury. *Belo & Co. v. Wren*, 63 Tex. 686 (1884); *Winkel v. Hankins*, 585 S.W.2d 889 (Tex.Civ.App.–Eastland 1979, writ

dism'd). Such damages are purely personal and cannot be measured by any fixed rule or standard. *Bayoud v. Sigler*, supra; *Whalen v. Weaver*, supra.

■ Clearly, a man's reputation for honesty is a valuable possession which is difficult to measure in dollars and cents. *Express Publishing Co. v. Gonzalez*, 350 S.W.2d 589 (Tex.Civ.App.–Eastland 1961, writ ref'd n. r. e.). It has been observed that like a lawyer, a banker must, by definition, depend greatly upon his reputation. See *Eidinoff v. Andress*, 321 S.W.2d 368 (Tex.Civ.App.–El Paso 1959, writ ref'd n. r. e.). Although there is no fixed ratio between exemplary and actual damages established by the legislature or our courts, exemplary damages must be reasonably apportioned to the actual damages sustained. *Gibson Discount Center, Inc. v. Cruz*, 562 S.W.2d 511 (Tex.Civ.App.–El Paso 1978, writ ref'd n. r. e.) (false imprisonment); See *Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397 (1934) (wrongful death).

As we examine the record with respect to the issue of actual damages we find that Ake had been in banking all his adult life. After his termination from the Bank, he unsuccessfully sought employment until December, 1971. During the first two months after his termination he included Mize (his former employer), as a character reference on his resume. Sometime around the end of August, he discovered that a bond claim had been filed against him by the Bank. He was shocked and embarrassed. He discontinued his search for employment until later in December of 1970, when at that time he discovered that the claim by the insurance carrier had been denied.

Ake thereafter obtained employment as a vice president and loan officer at Parkdale State Bank in Corpus Christi, Texas, in December of 1971. A director of Parkdale State was instrumental in getting Ake the job. This director testified that the filing of a bond claim can have a profound effect upon a person in the banking business, but even so, he thought Ake deserved a second chance in the banking business. After leav-

ing Parkdale State in April of 1976, Ake looked for employment in the banking industry for the next year without success.

Although Ake used Mize as a reference for a few months following his termination with the Bank, and although Mize was in fact contacted by several prospective employers concerning Ake, there is no evidence that any third party ever received any information concerning the contents of the bond claim from anyone other than Ake himself, who said that he felt it his obligation to inform prospective employers about the claim. Mize did admit that he probably told some prospective employers of Ake to "check with the Department of Banking."

Mize admitted that he would not hire a person as a bank president where a fidelity bond claim has been filed against him. The evidence showed that at least one employment opportunity as president of the Nueces National Bank did not materialize because of the bond claim filed by the defendants. After Ake decided to file the present lawsuit he testified that a number of prospective employers lost interest in him when told of this pending case. There was much evidence in the record concerning the economic suffering that Ake endured.

 We hold that the evidence in this record is legally and factually sufficient to support the jury's award of actual damages against these defendants. In light of the actual damages which the jury found, and because the jury found that the Chairman of the Board of Directors, Mize, believed the statement in question to be false when he made it, we hold that the evidence is also legally and factually sufficient to support the recovery of punitive damages against these defendants.

Regarding the defendants' points on excessiveness, they state that they have been unsuccessful in discovering any defamation case in Texas that comes "anywhere close" to $450,000.00 in allowable recovery. We

refer them to *Winkel v. Hankins*, 585 S.W.2d 889 (Tex.Civ.App.–Eastland 1979, writ dism'd), wherein that court upheld an award of $500,000.00 actual and $200,000.00 punitive damages in a case where a slanderous statement was made to the effect that a hospital administrator had stolen money from a hospital.[1]

In the present case there is abundant evidence of malice on the part of Mize, who admitted that the fidelity claim was false and that such a claim cripples a person's chances of finding meaningful employment with a bank thereafter. As we stated in *Dover Corp. v. Perez*, 587 S.W.2d 761 (Tex. Civ.App.–Corpus Christi 1979, writ n. r. e.), the Texas courts have generally followed two approaches in determining excessive damages; one, looking to other cases for precedent and second, the looking to the facts and circumstances of the case at bar. In light of the rapid inflation being experienced today we believe that the most satisfactory approach is to consider the case before us as a whole and at the same time considering the value of damages found in other cases. Aside from the $700,000.00 in *Winkle* already mentioned, actual damages of at least $150,000.00 were awarded in *Houston Belt & Railroad Co. v. Wherry*, 548 S.W.2d 743 (Tex.Civ.App.–Houston [1st Dist.] 1977, writ ref'd n. r. e.), where the defendant stated that the plaintiff was a drug addict. Since the cases we have read do not find any arithmetic proportion to which punitive damages should relate when compared to the actual damages existing, punitive damages which are equal or exceed actual damages have been allowed many times. Here, punitive damages are twice the amount of actual damages. In *Roemer v. Retail Credit Co.*, 44 Cal.App.3d 926, 119 Cal.Rptr. 82 (1975), punitive damages of six times the amount of actual damages was permitted in a defamation case. In *Air Line Employees Assoc. International v. Turner*, 291 So.2d 670 (Fla.App.1974), the

---

1. One other case deserves mention. In *Associated Press v. Walker*, 393 S.W.2d 671 (Tex.Civ. App.–Fort Worth 1965, writ ref'd n. r. e.), the Court of Civil Appeals upheld as not excessive an award of $500,000.00 actual damages. This case was reversed by the United States Supreme Court at *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1966), but upon other grounds.

court reduced an award of $175,000.00 punitive damages to $30,000.00 in a case where actual damages were only $3,000.00, implicitly approving a ratio of ten to one.

Considering all of the evidence in the light most favorable to the jury award, we find that the verdict is supported by sufficient evidence and is not excessive under the facts of this case. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1952). Appellant's points 11 through 16 are overruled.

In point of error 17, defendants contend the trial court erred in excluding evidence that the FDIC itself regarded Ake's conduct as possibly fraudulent. Specifically, defendants attempted to elicit testimony from Ake on cross–examination regarding a conversation that Ake had with the FDIC bank examiner (who was deceased at the time of trial) before the filing of the bond claim to the effect that the FDIC thought fraud was involved in Ake's relationship with the Bank. The theory under this point is that such testimony was relevant in mitigation of damages because it tended to show that one of the two recipients of the defamatory publication (the bond claim) already held Ake in low esteem and, therefore, Ake's reputation could not have been substantially damaged insofar as the FDIC was concerned. Defendants rely upon *MacFadden's Publications, Inc. v. Haray,* 95 S.W.2d 1023 (Tex.Civ.App.–Waco 1936, writ ref'd), which in turn is based upon Tex.Rev. Civ.Stat.Ann. art. 5431 (1958).

Article 5431, in relevant part, provides that defendants in libel actions may give in evidence, if specially pleaded, all material facts and circumstances surrounding plaintiff's damages claim for the purpose of determining the extent and source of actual damage and mitigating any exemplary or punitive damages.

In the case at bar, Ake was accused by the defendants of dishonest dealings. The tendered testimony, according to the defendants, would have shown that Ake's reputation as an honest man perhaps was not enthusiastically believed by the FDIC

even prior to the filing of the bond claim, therefore no damages or at least much less damage by Ake. There was considerable other evidence concerning Ake's alleged dishonest misdeeds while employed at defendants' bank as well as when he was employed and finally discharged from the Parkdale State Bank. There was repetitive–type testimony from defendant Mize as to the FDIC's attitude and again on cross–examination from plaintiff Ake himself, regarding the deceased examiner's attitude toward Ake. We hold that any error in keeping the specific testimony concerning a conversation Ake had with the deceased FDIC examiner from the jury was harmless because such testimony was cumulative of other evidence in the record. Rule 434, T.R.C.P. Point 17 is overruled.

In points of error 8 and 9, the defendants question the manner in which the damage issue relating to the libelous statement in question was submitted to the jury. Specifically, special issue no. 7 stated:

"QUESTION 7

What sum of money, if paid now in cash, do you find from a preponderance of the evidence would fairly and reasonably compensate Arthur Ake for the damages, if any, *resulting* from the making of the false statement in question?" (emphasis supplied).

The defendants had objected to question no. 7 of the court's charge for the reason that plaintiff Ake was not entitled to all damages "resulting" from the making of the false statement, but only those damages which were a "direct result" thereof or "a proximate result" thereof. It is true that recovery is limited to those damages which are regarded as reasonably foreseeable or are the normal consequences of the defamation. In cases where a damage issue fails to include "as a direct result" or "as a proximate cause," the courts approach the problem by examining the entire charge while considering the precise situation existing at the time the supposed error was committed. See *Scott v. Gardner,* 159 S.W.2d 121 (Tex.Civ.App.–Fort Worth 1942, writ ref'd w. o. m.), and *Reicheneder v.*

*Skaggs Drug Center,* 421 F.2d 307 (5th Cir. 1970). The Court in *Reicheneder,* in quoting from *Scott,* said that "the charge of the court should, *in some manner,* limit the jury to the consideration of damages proximately caused by defendants' wrongful act."

In this case, the jury was asked to answer the following special issues that are pertinent to the decision we here make:

"QUESTION 1

Do you find that the statement contained in the fidelity bond claim to the effect that First State Bank of Corpus Christi, Texas, sustained a loss in the amount of $41,456.05 'through the dishonesty of Arthur E. Ake' was false when it was made? Answer 'Yes' or 'No.'

Answer: *Yes.*

QUESTION 2

Do you find that at the time he signed and swore to the fidelity bond claim Roger Mize believed the statement inquired about in Question 1 to be false? Answer 'Yes' or 'No.'

Answer: *Yes.*"

Under question no. 5 (relevant to a negligence issue), the jury was instructed on the meaning of "proximate cause" as follows:

" 'Proximate cause' means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred; and in order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event."

If the jury answered special question no. 2 "yes" (that the bank officer believed the claim was false when he made it, which the jury did), they were then instructed to answer question no. 7. The jury, under question no. 7, was then asked to determine the amount of money that would fairly and reasonably compensate the plaintiff for the damages, if any, *resulting* from making the false statement in special issue no. 1. (emphasis supplied). The trial judge gave the jury not only instructions limiting the value

of the answer, but also specific instructions as to what could be considered in making the damage determination. These instructions were as follows:

"In answering this question (damages resulting from the defamation), you shall take into consideration the following elements of damage and *none other*:

(a) loss of ˚wages and wage–earning capacity in the past and loss of wages and wage–earning capacity which, in reasonable probability, will occur in the future; and

(b) mental anguish, including damage to reputation, in the past, and mental anguish, including damage to reputation, which, *in reasonable probability,* will occur in the future.

You are instructed that *you will not take into consideration* and *will make no award of damages* as a result of the termination of Arthur Ake's employment by the Board of Directors of the First State Bank." (emphasis supplied).

Going back to the crux of the case, the plaintiff sought damages allegedly incurred by virtue of the publication of the false fidelity bond claim by the defendants. The jury found that the statement in the fidelity bond claim accusing Ake of dishonesty was false when the statement was made. The jury also found that the Chairman of the Board of Directors, Mr. Mize, believed that the statement was false at the time he signed and swore to the fidelity bond claim. The question of malice is not attacked on appeal and the publication of the libelous statement was proved conclusively.

The Texas legislature, in defining libel, set forth in article 5430 the definition as follows:

"A libel is a defamation expressed in printing or writing, or by signs and pictures, or drawings tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to *impeach the honesty,* integrity, or virtue, *or reputation* of any one, or to pub-

lish the natural defects of any one and thereby expose such person to public hatred, ridicule, *or financial injury.*" (emphasis added).

The legislature sanctions recovery by a person exposed to financial injury where his honesty has been impeached and his reputation damaged. It was conceded that a banker's reputation is a valuable asset. According to one witness, the filing of a bond claim for losses through dishonesty or fraud would have a profound effect upon a person's profession as a banker.

Since the jury was instructed to find the damages resulting from the libelous statement and at the same time was instructed not to consider damages which were the result of the termination of the plaintiff's employment by the Bank, it is difficult for us to imagine that the jury could or did find any damages which were not a proximate result or a direct result of the defamation made by the defendants. The damages that were found by the jury are not excessive. The trial judge limited the jury's consideration of what they could take into consideration (only certain elements of damages and none other), and what they could not consider (the termination of employment). We find no evidence, considering the record as a whole, that the amount found by the jury to be the damages that would fairly and reasonably compensate the plaintiff, would be anything other than a direct or proximate result of the defamation here in question. Even if the submission as such were error, such error under the circumstances was harmless because the defendants have not shown that the failure to include the words "direct or proximate cause" caused or probably caused the rendition of an improper judgment. Rule 434. These points of error are overruled.

Judgment of the trial court is AFFIRMED. Appellants' motion for rehearing is overruled.

### APPENDIX

#### "Exhibit B"

#### FIDELITY AND DEPOSIT COMPANY OF MARYLAND
HOME OFFICE BALTIMORE, MD. 21203

#### Proof of Loss Under Fidelity Bond

.......First State Bank of Corpus Christi.......presents claim for loss under Bond
(Name of Claimant)
No.. .869 249. ....., issued on behalf of or covering.......Arthur E. Ake.......
of....First State Bank of Corpus Christi......from and after the....1st day of...
day of.March 1968 thru July 31, 1970.and in the amount of $. 1,000,000.00.employed
in the position of.....President....at..First State Bank of Corpus Christi, Texas

#### DETAILED STATEMENT OF CLAIM
(Attach original vouchers)

| DATE | DESCRIPTION OF ITEM | AMOUNT | TOTAL |
|------|---------------------|--------|-------|
| | Loans made unauthorized by Directors, resulting in a total loss of | 16,940.51 | |
| | Checks held without authorization of Directors, resulting in a loss of | 24,515.54 | |
| | | | $41,456.05 |

| DATE | DESCRIPTION OF ITEM | AMOUNT | TOTAL |
|------|--------------------|--------|-------|
| | TOTAL LOSS ..... | $41,456.05 | |
| | CREDITS | | |
| | By salary or commission ................ Other credits (including securities, notes, offsets, etc.) ........................ | None | |
| | TOTAL CREDITS ... NET LOSS ...... | | $41,456.05 |

State amount of other security, indemnity or security against loss held in addition to aforementioned bond...$9,929.23...held in Escrow pending Court decision Promisory Note of Southern Roofing for $6,250.00 due 11/26/70. Bank should realize $5,000.00 on this note.

I hereby certify that the above statement is true and correct in every respect; that ...this company...sustained a loss in the amount above stated through the dishonesty (I, we, or this company)

of.................................... Arthur E. Ake ............................

employed as .........President.........; that....First State Bank of C. C.....
(I, we, or this company)

has not accepted any security for or on account of same and that there are no counterclaims, offsets, or credits of any nature whatsoever other than those appearing in the statements above; and that...this company...has fully complied with (I, we, or this company)

all the conditions of the bond issued by the FIDELITY AND DEPOSIT COMPANY OF MARYLAND.

Subscribed and sworn to before me this

.........12.........day of .............. /s/ Roger S. Mize ..........
 OFFICIAL CAPACITY
...August.............19..70 President and Chairman of the Board

[Signed] ...........................
 NOTARY PUBLIC