Harold EIDINOFF, acting by and through his legal guardian, Sylvia Eidinoff, Appellant,

v.

Theodore ANDRESS, Appellee.

No. 5310.

Court of Civil Appeals of Texas.

El Paso.

Feb. 18, 1959.

Rehearing Denied March 11, 1959.

Ernest Guinn, El Paso, Luther E. Jones, Jr., Corpus Christi, Percy Foreman, Houston, for appellant.

W. C. Peticolas, Andress, Lipscomb, Peticolas & Fisk, El Paso, for appellee.

PER CURIAM.

Appellee brought suit against appellant in the District Court of El Paso County, Texas, charging him with circulating a series of libels against appellee. The case was tried to a jury and resulted in a verdict of $110,000, $10,000 of which was for exemplary damages. Upon motion for new trial, the trial judge required appellee to file a remittitur covering all of the exemplary damages and $20,000 of the actual damages, a total of $30,000. This the appellee did, and the trial court then overruled the motion for new trial.

Appellant has itemized nine points of error in his brief, the first three of which we will take up as a group in the same manner as the appellant did in his brief and argument to this court. These first three points charge error against the trial court for finding the defendant sane during the time the alleged libels were committed, for finding him sane during the trial, and thirdly that the court was in error in not appointing a guardian ad litem to represent appellant at the trial.

There was no real controversy or dispute about the circulation of the libels. Appellant had been involved in a divorce case with his first wife, who had employed two local attorneys to represent her. She later discharged them and dismissed her original suit, and was granted a divorce on a refiling and trial of the divorce. Theodore Andress then represented the two discharged attorneys in a suit against appellant for attorneys' fees. During this suit, certain nude pictures of appellant were introduced; and, since that time, there have been some nineteen law suits involving appellant, his two wives, appellee, and other members of the Bar. It is not to be disputed that ap-

pellant, for more than a year before the trial of this case, circulated accusations by various media, such as printed matter and letters, charging appellee with being morally degenerate, sexually perverted, guilty of perjury, guilty of conspiring to extort and blackmail, and a danger to "every decent man, woman or child." These matters, in various forms, are throughout the record as exhibits, and the record shows that a number of people received one or more of these various writings of appellant as, for example, one particular item which was a simulated newspaper account of some seven columns, of which appellant had some 5000 copies printed in Dallas, and which apparently were very widely circulated. The matters contained in the various writings were clearly libelous per se.

Nor was it disputed that appellee was a highly respected attorney and citizen; that he enjoyed a very substantial law practice; was very active in church and civic affairs; was president of the school board, and active in other organizations such as fraternal groups, clubs, etc.

Appellant did not deny any of these matters, but during the trial seemed to place his defense on the ground that the introduction of the pictures in evidence was done unnecessarily, illegally, and with malice; and he further charged appellee and another attorney with willfully and maliciously showing and displaying the nude snapshots to other people. However, in his brief to this court, appellant, through his attorneys, said with reference to the suit:

"There arose certain issues which made admissible, and there was admitted into evidence, two photographs of appellant in the nude; * * *"

so we must keep in mind that appellant does not challenge the legal admissibility of the snapshots.

We must deal, now, with appellant's first point—that he was insane at the time of the circulation of the libels. It must be remembered that the motion for new trial was brought by his first wife, whom he had remarried, and who was represented by very able counsel at the hearing on the motion for new trial. We can find no evidence in the record of insanity or suspicion of insanity of the appellant prior to the trial, other than the actual acts committed, to-wit, the libels. He seems to have been very successful in his business dealings and apparently enjoyed a very lucrative practice as a physician. It is in the record that in just a short time he had increased his financial worth from $200,000 to $450,000. He owned various properties, including a very modern motel in El Paso, and was obviously involved in several corporations. The record does not show that either of his wives gave any indication that they thought he was insane, or that any other person so indicated. A physician, Dr. Breck, testified that the appellant appeared normal to him, and appellee testified to the same effect. The question of insanity was not raised until several days after the judgment for $110,000 had been returned against appellant, and, of course, these various law suits had been going on during the period in question. Attached to the motion for new trial, but not admitted in evidence, were the statements of three psychiatrists in Houston, who examined appellant some little time after the judgment had been returned. These three statements maintain that appellant was insane and suffering from true paranoia, and had been so suffering for a period of probably three to five years. These examinations were made, of course, subsequent to the law suit here on appeal. The trial court, in passing on the motion for a new trial, could accept or reject these statements, although they were not ever offered in evidence and did not constitute proof of anything. These doctors were not present to testify, subject to cross-examination, and we think the trial court was well within his discretion in rejecting the suggestion that appellant was insane when he circulated the libels. As we have said, there is nothing in the record to indicate that anyone thought the appel-

lant was insane; on the contrary, he was a successful physician and business man, and on the staff of all leading El Paso hospitals, and a member of medical associations. Of course, even had the appellant been insane, it would only be a matter in mitigation of possible damages. It has long been held by the courts of this State that an insane person is liable for his torts, but his insanity, if so found, can be used in mitigation. In conclusion, we feel it incumbent to point out that the appellant's insanity was, as far as this record is concerned, never mentioned or suggested until after this judgment had been returned against appellant. There was introduced, also, a document showing that appellant had been found to be of unsound mind by a county court at Houston, Texas, shortly after the trial was concluded. However, the judgment seems to have been introduced here only for the purpose of authorizing and justifying Mrs. Eidinoff's appearance in the case as guardian. In any event, there is attached to appellee's brief a certificate by the Superintendent of the Austin State Hospital, dated April 2, 1958 (approximately four months after the above-mentioned adjudication), which states that Dr. Eidinoff at that time no longer required hospitalization and was discharged. Again, these matters are all subsequent to the trial upon which this appeal is based, and most of all of this evidence is suggestive and much of it was not legally admitted at the hearing on the motion for new trial. For the trial court or this court to now say, in retrospect, that the appellant was insane months and years before the trial would be sheer speculation and surmise, and contrary to the evidence. Appellant's first point is therefore overruled.

The second point enumerated in the brief of appellant maintains that he was insane during the trial, and therefore unable to protect himself. This is a serious allegation because our entire jurisdictional system is aimed at one objective—namely, a fair trial for all parties concerned. We have therefore studied the record with unusual care and caution. We find that appellant conducted his own case, with occasional consultation with an attorney and members of his family. The statements of the doctors attached to the motion for a new trial claim that he, like any true paranoiac, would probably be sane except in the field of aggravation—to-wit, the nude photographs and the lawyers that the doctor was angry with—and that in such fields he would be irrational, insane and dangerous. Now the record does show that appellant was apparently extremely angry, and determined to obtain redress for what he considered wrongs that had been done to him, but it does not show insanity. This trial, of course, was concerned with the very fields in which these doctors said appellant was insane, and yet the trial, which lasted for more than six days, reveals that appellant frequently conferred with the court about evidence, charge of the court, etc. His comments and reactions were intelligent and show that he was perfectly capable of understanding the court's frequent explanation of the law and matters of trial procedure; and his examination and cross-examination of witnesses showed no evidence whatever of mental weakness, excitement, anxiety, or insanity. On the contrary, a deposition dated October 3, 1957 shows that during the taking of that deposition, which was just a short time before the trial of this case in the District Court, that appellant, Dr. Eidinoff, invoked the protection of the Fifth Amendment approximately forty times thereby declining to answer that many or more questions. This was part of the deposition that was introduced into the record now before us. Then, of course, we must bear in mind that the trial judge who passed on this important matter was, as presiding judge, in an objective position to observe all details and actions of appellant and, having done so, he found that appellant was not insane during the trial. This opinion represents the exercise of the trial judge's discretion, and we do not find sufficient evidence to warrant us in disturbing his decision. We accordingly

hold that the trial judge was correct and is supported by the evidence in his finding, on the motion for new trial, that the defendant was not insane during the trial; and we further find, from having examined the record, that the appellant had a fair trial and a fair submission to a jury of his position. This second point is overruled.

■ Appellant's third point maintains that the trial judge should have appointed a guardian to look after the appellant's interest during the trial of the case. We find no merit in this point, as there was no such request or application made or presented to the trial judge, and certainly it was not his duty, unless he saw unimpeachable proof thereof, to voluntarily tell a litigant that he was insane, and appoint a guardian.

Summing up, we believe that the appellant had a fair trial in the trial court, and that the trial judge was well within his discretion in denying the motion for a new trial. Appellant, himself, according to the record, circulated many copies of these nude pictures in an attempt to show people what had been done to him; but, while the record does reveal an angry man, and a vengeful man, we do not believe that his actions spell out an insane man.

■ Appellant's last six points argue that the verdict was too large, and without support in the evidence, and the result of improper and inflammatory argument. We do not find merit in these points. The inflammatory argument complained of consisted of references to a conversation between appellant and his second wife in which he told her he was now worth $450,000 and was willing to spend it to get Andress and the other attorney, Mr. Jaffe. This fact was brought out in cross-examination of Mrs. Lutz, the second wife of appellant. Appellee urges that it was used only to show the malice and intent of appellant. No objection was made to the argument at the time, and we do not believe it was improper in the manner in which it was used. We believe that such argument was a fair comment on evidence that had been admitted without objection.

We believe that the trial court was under no obligation to ask the jury to consider the possible insanity of defendant, as there was no evidence introduced to that effect, and it would have been a remarkable action by a trial judge to have so done under the circumstances. Appellant had stated, according to Mrs. Lutz, that his money could outlast that of appellee and Jaffe. We do not believe such argument constituted reversible error under the circumstances.

As to the point that the verdict is not supported by the evidence, this matter is covered by our statement in the preceding paragraph and the one to follow.

■ We do not find the verdict to be excessive. The trial court, in requiring the remittitur, was again exercising that discretion and judgment which is the responsibility of every trial judge; and, as we have said before, the possible insanity of appellant could have been presented only in mitigation, and not as a complete defense. So we have the judgment reduced by remittitur some $30,000, leaving $80,000 to be recovered by the usual processes of law. We do not believe this amount to be excessive. Appellee testified that he and his firm had shown an increase in earnings every year except the year before the trial, and that his income had dropped some $6,000 during that year. This was uncontradicted. The matters circulated were libelous per se, and it was also uncontradicted that appellant was a very active man in civic, religious and educational affairs. These things were coupled with the fact, which was testified to and is also common knowledge, that a lawyer has to depend very largely on his reputation, because his work is, of necessity, highly confidential and dependent upon personal integrity. Appellee testified that he was 49 years old; that he expected to practice

actively for at least another 20 years. There is no set rule for finding damages in such circumstances as these, but the matter must be decided by a jury, and here the jury had the above facts before them, as well as the extremely widespread publicity given to the libels, and the prominence of the appellee. We therefore do not find the verdict excessive; and, finding no error meriting reversal in the trial of the case, appellant's points are all accordingly overruled.

Appellee has filed his cross-point, charging that the court erred in requiring the remittitur. We think this point must be overruled, as the court's language in his own judgment showed that he carefully exercised his discretion and wisdom in requiring such remittitur, and we think his action in so doing was proper. Appellee's cross-point is therefore overruled.

All points of error raised by both parties having been overruled, the judgment of the trial court is therefore affirmed.

LANGDON, C. J., not sitting.