NO. 07-09-0277-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JUNE 16, 2011

_____


JOSEPH E. HANCOCK, APPELLANT

v.

EASWARAN P. VARIYAM, APPELLEE

_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-537,571; HONORABLE WILLIAM C. SOWDER, JUDGE

_____

Before QUINN, C.J., HANCOCK and PIRTLE, JJ.[1]


**OPINION**

Appellant, Joseph E. Hancock, appeals from a judgment entered in a defamation action in favor of Appellee, Easwaran P. Variyam, following a jury trial. In support, Hancock presents three issues: (1) whether the trial court erred in finding as a matter of law that Hancock's written statements were libel *per se*; (2) whether Variyam's evidence

---

[1]For purposes of disclosure, we note that Justice Hancock is not related to Appellant.

of damages is legally and factually insufficient; and (3) whether the trial court erred in admitting an anonymous letter at trial. We affirm.

## Background

At all relevant times, Hancock and Variyam were physicians practicing internal medicine and gastroenterology at the Texas Tech University Medical Center in Lubbock, Texas. Both men were on the faculty of Texas Tech. Variyam was formerly the Chief of the Gastroenterology Division from September 2000 until January 2006, and as such, he was Hancock's supervisor when the following events occurred.

On the morning of January 2, 2006, a dispute arose between the two physicians related to the transfer of patients from Hancock's care to Variyam's care. After Variyam wrote a letter to Hancock alleging he had disregarded patient care, Hancock responded with a letter of resignation wherein he stated, in pertinent part, as follows:

> Please find a copy of letter from Dr Variyam letter (sic) which I received today. Due to Dr Variyam's reputation for lack of veracity, a majority of my communications and interactions is (sic) recorded or witnessed and subsequently verified as in this case.
>
> My telephone conversation was over the speakerphone and witnessed by a third party who will dispute Dr. Variyam's position. The interaction by and through the Department of Internal Medicine this morning is again refutable.
>
> Dr Variyam deals in half truths, which legally is the same as a lie.
>
> It is Dr. Variyam's ethical behavior that should be challenged.

Hancock addressed his letter to Bernhard Mittemeyer, Dean of the School of Medicine, and copied Donald Wesson, Chair of Internal Medicine, David Hodges, Associate Professor and Director of the UMC Endoscopy Center, Variyam and the

Accreditation Council for Graduate Medical Education (ACGME) in Chicago, Illinois.[2]  In February of 2006, Variyam was removed as Chief of the Gastroenterology Division.

In December 2006, Variyam filed an original petition alleging that Hancock's letter had defamed him.  Variyam sought special damages for loss of past and future income as well as general damages for injury to his reputation and mental anguish.  He also sought exemplary damages.  In November 2008, Variyam and Hancock filed an agreed order wherein Variyam agreed to forego special damages arising out of his removal as Chief of the Gastroenterology Division, but retained his defamation claim under a *per se* theory.  Hancock continued to assert truth as an affirmative defense.

In May 2009, a three day jury trial was held.  At its conclusion, the trial court found that the statements in Hancock's letter were libel *per se.*  The jury rejected Hancock's affirmative defense by finding that his statements[3] regarding Variyam were not substantially true at the time they were made and that, by clear and convincing evidence, the harm to Variyam resulted from malice on Hancock's part.  The jury

---

[2]At all times relevant to this case, Hancock knew that ACGME was an independent organization that accredits institutions where medical training takes place nationwide.  When Hancock wrote his letter, he was aware that an application for reinstatement of Texas Tech's Gastroenterology Fellowship was pending with ACGME and that Texas Tech and ACGME were scheduled to meet toward the end of January 2006 to decide the fate of Texas Tech's Fellowship Program of which Variyam was the Program Director.  Hancock was also aware that the letter would be received by ACGME's Residency Review Committee, a committee comprised of physicians who were national experts in the field of gastroenterology or internal medicine.  In addition to Hancock's letter, ACGME received an anonymous letter dated January 19 complaining about two doctors, Farooq and Parupudi, participants in the gastroenterology training program.

[3]From the *Charge of the Court,* question 1 addressed the statement "reputation for lack of veracity"; whereas, question 2 addressed the statement "deals in half truths, which is legally the same as a lie."

awarded Variyam actual damages of $90,000[4] and exemplary damages of $85,000. Variyam was also awarded prejudgment interest of $6,455.68 and court costs. This appeal followed.

## Discussion

Hancock contends the trial court erred by finding, as a matter of law, that his statements were libel *per se* because the statements were ambiguous and did not injure Variyam in his office or occupation as a physician. He also asserts that the evidence is legally and factually insufficient to justify any award for mental anguish or injury to reputation. He contends Variyam failed to prove that Hancock's statements caused him any damage and, alternatively, that the trial court erred by not issuing a jury instruction on proximate cause. Lastly, he asserts the trial court erred by admitting an anonymous letter at trial.

## Issue One - Libel per se

Defamation is generally defined as the invasion of a person's interest in his or her reputation and good name. *Prosser & Keeton on Torts* § 111, at 771 (5th ed. 1984 & Supp. 1988). Defamation claims are divided into two categories depending on how the defamatory statement was communicated: libel for written communications and slander for oral communications.[5]

---

[4]The jury awarded Variyam $30,000 for loss of reputation in the past, $30,000 for future loss of reputation, $15,000 for past mental anguish and $15,000 for future mental anguish.

[5]Libel is defined by statute as "defamation expressed in written or other graphic form that tends to . . . injure a living person's reputation and thereby expose the person to . . . financial injury or to impeach any person's honesty, integrity, virtue, or reputation . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (West

4

Defamation claims are also divided into two categories, defamation *per se* and defamation *per quod,* according to the level of proof required in order to make them actionable. *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.,* 219 S.W.3d 563, 580 (Tex.App.--Austin 2007, pet. denied); *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex.App.--Waco 2005, no pet.). Statements that are defamatory *per quod* are actionable only upon allegation and proof of damages. *Texas Disposal,* 219 S.W.3d at 580; *Alaniz v. Hoyt,* 105 S.W.3d 330, 345 (Tex.App.--Corpus Christi 2003, no pet.). That is, before a plaintiff can recover for defamation *per quod*, he must carry his burden of proof as to both the defamatory nature of the statement and the amount of damages caused by the publication of that statement. *Texas Disposal,* 219 S.W.3d at 580; *See also Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984); *Peshak v. Greer*, 13 S.W.3d 421, 426 (Tex.App.--Corpus Christi 2000, no pet.). By contrast, in cases involving defamation *per se*, damages are presumed to flow from the nature of the defamation itself and, in most situations, a plaintiff injured by a defamatory *per se* communication is entitled to recover general damages without specific proof of the existence of harm. *Bentley v. Bunton*, 94 S.W.3d 561, 604 (Tex. 2002) ("Our law presumes that statements that are defamatory *per se* injure the victim's reputation and entitle him to recover general damages, including damages for loss of reputation and mental anguish."); *Exxon Mobil Corp. v. Hines,* 252 S.W.3d 496, 501 (Tex.App--Houston [14th Dist.] 2008, pet. denied); *but see Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 347-48, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (holding that, so long as they do not

---

2005). Although slander is not statutorily defined, at common law a slanderous statement is one that is orally communicated or published to a third person without legal excuse. *Randall's Food Markets v. Johnson,* 891 S.W.2d 640, 646 (Tex. 1995).

impose liability without fault, States are free to define for themselves the appropriate standard of liability in defamation suits where a private plaintiff sues a media defendant for speech involving a public issue). The United States Supreme Court later clarified that the constitutional requirements of *Gertz* do not prohibit the application of strict liability to defamation suits involving private-figure plaintiffs who sue nonmedia defendants for speech involving nonpublic issues. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 760-61, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985). In suits involving such situations*,* courts applying Texas law have applied strict liability in defamation *per se* causes of action. *See Thomas-Smith v. Mackin,* 238 S.W.3d 503, 509 (Tex.App.--Houston [14th Dist.] 2007, no pet.); *Peshak v. Greer*, 13 S.W.3d 421, 425-26 (Tex.App.--Corpus Christi 2000, no pet.); *Snead v. Redland Aggregates Ltd.,* 998 F.2d 1325, 1334 (5th Cir. 1993). Because the decision whether an alleged defamatory statement is defamatory *per se* or *per quod* affects the level of proof required, that question is initially determined by the trial court as a matter of law. *Turner v. KTRK TV, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000); *Musser v. Smith Protective Servs., Inc.,* 723 S.W.2d 653, 654-55 (Tex. 1987).

A communication is considered libel *per se* when it is so obviously hurtful to the person aggrieved that no proof of its injurious character is required to make it actionable. *Clark v. Jenkins*, 248 S.W.3d 418, 437 (Tex.App.--Amarillo 2009, pet. denied), *cert. denied*, __ U.S. __, 130 S.Ct. 52, 175 L.Ed.2d 21 (2009); *Houseman v. Publicaciones Paso Del Norte, S.A. de C.V.,* 242 S.W.3d 518, 524 (Tex.App.--El Paso 2007, no pet.). A false statement will typically be classified as defamatory *per se* if it injures a person in his office, profession, or occupation; *Morrill v. Cisek*, 226 S.W.3d

545, 549 (Tex.App.--Houston [1st Dist.] 2006, no pet.); charges a person with the commission of a crime; *Leyendecker,* 683 S.W.2d at 374; or imputes to him a loathsome disease. *Bolling v. Baker*, 671 S.W.2d 559, 570 (Tex.App.--San Antonio 1984, no writ).

Whether a given statement is reasonably capable of a defamatory meaning is a question to be decided by the trial court as matter of law. *See Musser,* 723 S.W.2d at 654-55. The trial court should construe the alleged defamatory communication as a whole in light of the surrounding circumstances based upon how a reasonable person of ordinary intelligence would perceive it, considering the surrounding circumstances and the context of the statement. *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 153 (Tex. 2003), *cert. denied*, 545 U.S. 1105, 125 S.Ct. 2557, 162 L.Ed.2d 276 (2005); *Turner,* 38 S.W.3d at 114. This is an objective test, not a subjective one. *New Times, Inc.,* 146 S.W.3d at 157. Thus, the parties' opinion of the statements, *Musser v. Smith*, 690 S.W.2d 56, 58 (Tex.App.--Houston [14th Dist.] 1985), *aff'd*, 723 S.W.2d 653 (Tex. 1987), or the defendant's intent in making the statements have no bearing on whether they are defamatory. *Peshak*, 13 S.W.3d at 426 ("We assume the words were intended because they were used.") "Common sense requires courts to understand the statement as ordinary men and women would"; *Moore*, 166 S.W.3d at 385, and the question whether a statement is defamatory *per se* is only submitted to the jury if the contested language is ambiguous or of doubtful import. *See Denton Pub. Co. v. Boyd*, 460 S.W.2d 881, 884 (Tex. 1970). Otherwise, it is an issue of law for the trial court to decide. *Musser,* 723 S.W.2d at 655. Therefore, according to this body of law, a written communication, made by a nonmedia defendant, concerning a private-figure individual

and pertaining to a nonpublic issue, which is obviously hurtful to the aggrieved party in his profession or occupation, is libel *per se.*

**Standard of Review**

The standard of review applicable to alleged error concerning a question of law is *de novo. El Paso Natural Gas Co. v. Minco Oil & Gas,* 8 S.W.3d 309, 312 (Tex. 1999); *Block v. Mora,* 314 S.W.3d 440, 444-45 (Tex.App.--Amarillo 2009, pet. dism'd). Therefore, in reviewing a trial court's determination of libel *per se,* this Court must conduct a *de novo* review. In doing so, this Court must exercise its own judgment and redetermine each legal issue, according no deference to the lower court's decision. *Quick v. City of Austin,* 7 S.W.3d 109, 116 (Tex. 1998); *Block,* 314 S.W.3d at 445.

**Analysis**

Hancock contends the statements at issue were not libelous *per* se because they were ambiguous and extrinsic evidence was required to interpret them. Alternatively, he contends the statements did not injure Variyam in his office or occupation as a physician.[6] We disagree.

The trial court found that Hancock's written statements that Variyam had a "reputation for lack of veracity" and "deal[t] in half truths, which legally is the same as a lie" were libelous *per se. See Lartigue v. Southern Mut. Ben. Ass'n,* 265 S.W. 742, 743 (Tex.Civ.App.--Beaumont 1924, no writ) (printed circular held libelous *per se* where it

---

[6]Hancock does not challenge whether the evidence was sufficient to establish that his statements were false, published, or made with malice.

8

"unquestionably charged appellant with untruthfulness--with being a liar--that he was telling lies"); *Hibdon v. Moyer,* 197 S.W. 1117, 1118 (Tex.Civ.App.--El Paso 1917, no writ) (article held libelous *per se* where it unquestionably charged appellant with "untruthfulness"); *Fleming v. Mattinson*, 114 S.W. 650, 652 (Tex.Civ.App.--Texarkana 1908, no writ) (newspaper article held libelous *per se* where statement "clearly imputes to [plaintiff] a lack of veracity");[7] *Mitchell v. Spradley,* 56 S.W. 134, 135 (Tex.Civ.App.-- Houston 1900, no writ ) (article held libelous *per se* where statement denounced plaintiff as "a liar").

The trial court's determination is supported by the fact that Hancock imputes dishonesty to Variyam in his profession or occupation by addressing the letter to Variyam's superiors at Texas Tech and ACGME. *See Bradbury v. Scott,* 788 S.W.2d 31, 38 (Tex.App.--Houston [1st Dist.] 1990, writ denied) (letter libelous *per se* where writing accused employee of a lack of fidelity and honesty in her dealings with her employer). *See also Bolling*, 671 S.W.2d at 571 ("Generally, spoken words imputing that a person is dishonest or unethical in the practice of his employment have been held to be actionable *per se.*")  Hancock's open-ended statements affirmatively questioned Variyam's ethical behavior as well as his reputation for being truthful and honest to his co-workers and employers at Texas Tech and ACGME, where he had submitted an application requesting that Texas Tech's fellowship program be reinstated.  Hancock agreed with Variyam's counsel at trial that, if his statements about Variyam having a

---

[7]"There can be no doubt that, at common law, to publish of a person in writing that he was mendacious, or that he had uttered a falsehood, was libelous *per se*." *Fleming,* 114 S.W. at 652.  "Such a publication is a direct impeachment of the honesty and integrity of the person against whom it is directed, and its tendency necessarily is to injure him by exposing him to public hatred and contempt." *Id.*

reputation for untruthfulness were not true, then his statements "could have a very, very serious affect on [Variyam's] character" and would represent "character assassination." At trial, Variyam attested to the importance of his professional reputation for telling the truth in dealing with patients and other doctors, patient care, and research when publishing abstracts and book chapters. He also testified that "being untruthful would [also] affect his relationship with other physicians that might send him business or work." Like lawyers and bankers, a physician such as Variyam, by definition, depends greatly on his reputation. *See generally First Bank of Corpus Christi v. Ake*, 606 S.W.2d 696, 702 (Tex.Civ.App.--Corpus Christi 1980, writ ref'd) (citing *Eidinoff v. Andress*, 321 S.W.2d 368, 372-73 (Tex.Civ.App.--El Paso 1959, writ ref'd n.r.e.)).

Hancock asserts that the term "veracity" is ambiguous because it is subject to two interpretations. In support he cites the parties' testimony, i.e., Hancock testified "veracity" means accuracy while Variyam testified "veracity" means truthfulness. It is well settled that "the meaning of a publication, and thus whether it is false and defamatory, depends on a reasonable person's perception of the entirety of the publication and not merely on individual statements." *Bentley*, 94 S.W.3d at 584. Moreover, as we stated earlier, the test applied by the court to interpret the meaning of the publication is objective; *New Times, Inc.*, 146 S.W.3d at 157, and the parties' interpretations and intentions are irrelevant. *Peshak*, 13 S.W.3d at 426; *Musser,* 690 S.W.2d at 58. Having duly considered the entirety of the publication, the surrounding circumstances and the context of the statement, we find that a reasonable person of ordinary intelligence would perceive the statements in Hancock's letter as defamatory *per se. See State Medical Ass'n of Texas v. Committee for Chiropractic Education, Inc.,*

10

236 S.W.2d 632, 634 (Tex.Civ.App.--Galveston 1951, no pet.) ("It has been uniformly held by the courts of this state that to impugn the veracity of a person is to defame him.")

Hancock next asserts that he was merely expressing an opinion[8] when he stated that Variyam had a "reputation for lack of veracity." We disagree. However, even where statements may be characterized as opinions, the statements may be defamatory nonetheless if they clearly imply the existence of undisclosed facts that the person engaged in conduct which would adversely reflect on his reputation. *Shearson Lehman Hutton, Inc., v. Tucker*, 806 S.W.2d 914, 920 (Tex.App.--Corpus Christi 1991, writ dism'd w.o.j.). True, as Hancock suggests, the only way to gauge a person's reputation is through an examination of the opinions expressed by others, however, Hancock's affirmative statements imply that he had already undertaken that task and made his conclusion. In other words, his statement implies the existence of undisclosed facts known to Hancock indicating that Variyam had been untruthful in the past with others. *See Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18-19, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990).[9] *See also Bentley*, 94 S.W.3d at 584.

---

[8]If Hancock's statements were constitutionally protected opinion speech, his statements would not be actionable. *See Pisharodi v. Barrash*, 116 S.W.3d 858, 862 (Tex.App.--Corpus Christi 2003, pet. denied).

[9]In *Milkovich*, the United States Supreme Court stated as follows:

> If a speaker says, "In my opinion John Jones is a liar," he implies knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar." As Judge Friendly aptly stated:

Hancock also contends that his statement "deals in half truths" is ambiguous because of the phrase "deals in." The entirety of Hancock's statement is "Dr. Variyam deals in half truths, *which legally is the same as a lie.*" (Emphasis added). Considering the entire publication objectively, we believe a reasonable person of ordinary intelligence would understand that Hancock is using the terms "half truths" and "lies" interchangeably and the phrase "deals in" means that Variyam "tells" half-truths or lies.[10] This is particularly so given Hancock's prior statement that Variyam has a "reputation for lack of veracity." In addition the phrase, Variyam "deals in half truths, which legally is the same as a lie," also implies knowledge of facts that lead to Hancock's conclusion. *See Milkovich,* 491 U.S. at 18-19. *See also Bentley*, 94 S.W.3d at 584.

Lastly, Hancock cites a string of slander cases for the proposition that merely calling someone a "liar," "thief," or "crook," by itself, is not defamatory. *See Gateway Logistics Group, Inc. v. Dangerous Goods Management Australia PTY, LTD,* No. H-05-2742, 2008 U.S. Dist. LEXIS 34246 (S.D. Houston Apr. 25, 2008) (statements in question were oral statements even though the litigation involved both libel and slander

---

> "[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words 'I think.'" *See Cianci v. New Times Publishing Co.,* 639 F.2d 54, 64 (2d Cir. 1980).

*Milkovich*, 497 U.S. at 18-19.

[10]Other courts have not found the term "dealing" ambiguous or troubling in the defamation context. *For example, see Bradbury*, 788 S.W.2d at 38 (letters that accused employee of "a lack of fidelity and honesty in her dealings with her employer" were actionable *per se*); *Butler v. Central Bank & Trust Co.*, 458 S.W.2d 510, 514 (Tex.Civ.App.--Dallas 1970, writ dism'd) ("[t]o charge an employee with dishonesty in his dealing with his employer" is actionable *per se*).

12

allegations); *Moore*, 166 S.W.3d 380; *Billington v. Houston Fire & Casualty Ins. Co.*, 226 S.W.2d 494 (Tex.Civ.App.--Fort Worth 1950, no writ).

The law has long recognized a difference between written charges of falsehood or lack of veracity and oral charges in the area of *per se* liability. *Billington*, 226 S.W.2d at 497 (quoting 53 C.J.S. LIBEL AND SLANDER § 18, at 63) ("Written charges of falsehood or want of veracity generally are libelous *per se*; but oral charges of this character ordinarily are not slanderous *per se*"); *Arant v. Jaffe*, 436 S.W.2d 169, 176 (Tex.Civ.App.--Dallas 1968, no writ) (in the area of *per se* defamation,"[t]he law recognizes the distinction between oral and written imputations").[11]  Because the cases cited by Hancock are slander cases, we find these cases to be distinguishable and inapposite.

Therefore, applying a *de novo* review, we find the trial court did not err in finding that the defamatory statements in question were libel *per se.*  Accordingly, issue one is overruled.

**Issue Two - Damages**

Hancock next asserts there is no evidence supporting the jury's award of damages for mental anguish or injury to reputation.  He also asserts there is no evidence his statements proximately caused Variyam any injury and the trial court erred

---

[11]"In general, oral words, however opprobrious, are not actionable without proof of specific damages, unless they impute to another the commission of a crime or affect a person injuriously in his office, profession or occupation.  Written or printed words charging dishonesty, fraud, rascality, or general depravity are generally libelous *per se*, but not so when spoken orally." *Arant,* 436 S.W.2d at 176 (quoting 36 Tex.Jur.2d, Libel and Slander, § 3, pp. 282-83).

13

by failing to instruct the jury on proximate cause. Further, he contends Variyam's damages should be denied because Variyam self-published Hancock's letter when he was aware it was defamatory.

**Legal and Factual Sufficiency**

In conducting a legal sufficiency review, we must consider the evidence in the light most favorable to the challenged finding, indulge every reasonable inference to support it; *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005), and credit favorable evidence if reasonable jurors could while disregarding contrary evidence unless reasonable jurors could not. *Id.* at 827. A challenge to legal sufficiency will be sustained when, among other things, the evidence offered to establish a vital fact does not exceed a scintilla.[12] *Id.* at 810. In addition, so long as the evidence falls within the zone of reasonable disagreement, we may not invade the fact-finding role of the jurors, who alone determine the credibility of witnesses, the weight to be given their testimony, and whether to accept or reject all or a part of their testimony. *City of Keller*, 168 S.W.3d at 822.

In reviewing a factual sufficiency challenge, we consider all the evidence and set aside a finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong or unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). If, as here, the appellant is challenging the factual sufficiency of the evidence to support a finding on an issue on which the other party had the burden of proof, we must

---

[12]Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030, 124 S.Ct. 2097, 158 L.Ed.2d 711 (2004).

14

overrule the complaint unless, considering all the evidence, the finding is clearly wrong and manifestly unjust. *See Santa Fe Petroleum, L.L.C. v. Star Canyon Corp.*, 156 S.W.3d 630, 637 (Tex.App.--Tyler 2004, no pet.) (citing *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965)). Inferences may support a judgment only if they are reasonable in light of all the evidence, *id.*, and, again, the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet,* 61 S.W.3d 599, 615-16 (Tex.App.--Houston [14th Dist.] 2001, pet. denied).

**General Damages--Defamation**

Compensatory damages allowable for defamation are divided into two categories: general and special. *Pershak,* 13 S.W.3d at 427. General damages include mental anguish, loss of reputation, and like damages that naturally flow from the defamation and are not easily susceptible to monetary valuation. *Id.* General damages are those conclusively presumed to have been foreseen by the defamer as a necessary and usual result of his or her wrongful act. *Fox v. Parker*, 98 S.W.3d 713, 726 (Tex.App.--Waco 2003, pet. denied) (citing *Arthur Anderson & Co. v. Parker Equip. Co.*, 945 S.W.2d 812, 816 (Tex. 1997)). As noted earlier, Variyam chose not to seek "special" damages, i.e., damages which must be specifically stated and proved, such as loss of earning capacity, which are foreseeable to the defendant but are not the necessary and usual result of the wrong. *Id.*

Because Hancock's statements were determined by the trial court to be defamatory *per se*, Variyam is entitled to recover general damages without proof of

15

other injury. *Leyendecker*, 683 S.W.2d at 374. "The law presumes a statement which is libelous *per se* defames a person, injures his reputation"; *id.*, and causes mental anguish. *Ryder Truck Rentals, Inc. v. Latham*, 593 S.W.2d 334, 337 (Tex.Civ.App.--El Paso 1979, writ ref'd n.r.e.) (general damages for injury to character, reputation, feelings, mental suffering or anguish, or other wrongs not susceptible to monetary valuation are presumed); *Peshak,* 13 S.W.3d at 427 ("In actions of libel *per se*, the law presumes the existence of some actual damages, requiring no independent proof of general damages.") Because the damages are presumed, "there need be no inquiry in the [jury] charge about whether there was a defamation or about 'proximate cause' and injury (or the jury may be instructed to so find.") *Fox,* 98 S.W.3d at 726.

Further, because the damages are purely personal and cannot be measured by any fixed rule or standard, the amount of general damages suffered in a defamation case is difficult to determine. *First State Bank of Corpus Christi v. Ake*, 606 S.W.2d 696, 702 (Tex.Civ.App.--Corpus Christi 1980, writ ref'd n.r.e.) (citing *Bayoud v. Sigler*, 555 S.W.2d 913 (Tex.Civ.App.--Beaumont 1977, writ dis'md)). Thus, because of their uncertain nature, their measurement is generally left to the discretion of the finder of fact, subject only to a determination that the award was clearly excessive or the result of "passion, prejudice, or other improper influences." *See Morrill*, 226 S.W.3d at 550 (citing *Bolling*, 671 S.W.2d at 549). *See also Tranum v. Broadway*, 283 S.W.3d 403, 422 (Tex.App.--Waco 2008, pet. denied).

16

**Mental Anguish**

An award of mental anguish damages will survive a legal sufficiency challenge when the plaintiff has introduced (1) "direct evidence of the nature, duration, or severity of [plaintiff's] anguish, thus establishing a substantial disruption in the plaintiff's daily routine"; or (2) other evidence of "a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). Direct evidence may be in the form of the parties' own testimony, that of third parties, or experts. *Id.* "There must also be some evidence to justify the amount awarded"; *Saenz v. Fid. & Guar. Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex. 1996), and the amount awarded must be fair and reasonable. *Id.*

Hancock relies on two cases in asserting that Variyam's testimony portrays nothing more than common anxiety, embarrassment and anger. *See Parkway Co.,* 901 S.W.2d at 444; *Exxon Mobil Corp.,* 252 S.W.3d at 505. In *Parkway*, the Texas Supreme Court found plaintiff's proof of damages for mental anguish lacking where he addressed his mental state in only two passages of testimony saying he "was hot" and "was very disturbed about that." *Parkway*, 901 S.W.2d at 444. His wife testified that "[their] life changed," "just upsetting," "her husband was very quiet," and she was "just upset it changed their lifestyle." *Id.* The *Exxon Mobil* Court found plaintiff's proof of damages for mental anguish lacking where the plaintiff testified that he found being terminated from his employment "devastating," "life changing," and "horrible." *Exxon Mobil Corp.*, 252 S.W.3d at 505. His wife testified that her husband was "devastated" when he had

17

to tell his children that he lost his job. *Id.* A co-worker of the plaintiff also testified that, when plaintiff was told of his termination, he was "devastated," reacted with an "emotional outburst," was in a "state of disbelief and shock," "extremely upset," and "could not sleep *that night.*" *Id.* (emphasis added).

Here, Variyam testified to mental anguish that substantially affected his mental state at home and at work. He testified that he was devastated, very distraught, and disappointed. The defamation disrupted his family and distracted him at home. He acted differently at home and was more introspective---spending time looking at the information. He considered moving his family from Lubbock. Work was also disrupted and stressful. He was distracted, uncomfortable returning to work, embarrassed when he saw his colleagues, and paranoid that people might be talking behind his back. He still thinks about the defamatory statements---the accusations "are still stuck in his mind." He fears that others who saw the letter will communicate the statements further, worries how the letter will affect his future ability to practice medicine, fears how the communication to ACGME will affect him in the future practice of his profession, and continues to suffer from sleeplessness. Because of Hancock's statements, he testified he has suffered emotional difficulties and has seen "an institutional person who has supported [him]."

We agree with Variyam that his circumstances are more like the plaintiff's circumstances in *Bentley* where the Texas Supreme Court held that the plaintiff satisfied his burden of proof in proving mental anguish. In *Bentley*, the plaintiff testified at trial that the defamation cost him time, deprived him of sleep, embarrassed him in the

18

community, disrupted his family life, distressed his children at school, depressed him, impugned his honor and integrity, was the worst experience in his life and caused his family to suffer. *Bentley*, 94 S.W.3d at 606.

Having reviewed all the evidence, we find that the record in this case does not indicate that the jury's award of past and future mental anguish damages in the amount of $30,000 is either excessive, or the result of passion, prejudice, or other improper influence. The amount was within the jury's discretion and we will not substitute our judgment for that of the jury. *See Peshak*, 13 S.W.3d at 427 ("amount of general damages is very difficult to determine, and the jury is given wide discretion in its estimation of them"). Accordingly, we find Variyam's evidence is legally and factually sufficient to support the jury's determination that $30,000 is "fair and reasonable" compensation for past and future mental anguish Variyam suffered because of Hancock's libel *per se*.

### Loss of Reputation

In support of his contention that the evidence supporting Variyam's award for past and future injury to his reputation, $60,000, is legally and factually insufficient, Hancock again cites *Exxon Mobil Corp., supra*. Hancock asserts that, although Variyam felt paranoid, there is no evidence his colleagues believed Hancock's statements and Dr. Wesson, who demoted Variyam, did not receive Hancock's letter and had no opinion about Variyam's reputation for truthfulness.

Because the trial court correctly determined that Hancock's statements were libel *per se*, "the law presumes that [Variyam's] reputation has been injured thereby."

*Leyendecker*, 683 S.W.2d at 374; s*ee Mustang Athletic Corp. v. Monroe*, 137 S.W.3d 336, 339 (Tex.App.--Beaumont 2004, no pet.); ("In *Leyendecker* and *Bentley*, the Supreme Court of Texas held statements which are defamatory *per se* entitle a plaintiff, as a matter of law, to recover actual damages for injury to reputation."); *Peshak*, 13 S.W.3d at 427 ("In actions of libel *per se*, the law presumes the existence of some actual damages, requiring no independent proof of general damages."); Ryder *Truck Rentals, Inc.*, 593 S.W.2d at 337 (defamation *per se* entitles a plaintiff to presumed general damages for injury to character, reputation, feelings, mental suffering or anguish, and other wrongs not susceptible to monetary valuation). As such, Variyam was not required to present independent evidence that his reputation was harmed or that his colleagues believed Hancock's statements. *Peshak*, 13 S.W.3d at 427.[13] That said, having reviewed the entire record, there is sufficient evidence from which the jury could have inferred that Variyam's demotion from his position as Chief of the Gastroenterology Division and ACGME's denial of his application to reinstate the Fellowship Program were due, at least in part, to the statements in Hancock's letter which was published only weeks before these events took place.

Furthermore, contrary to Hancock's argument that Dr. Wesson did not receive Hancock's letter and had no opinion about Variyam's reputation for truthfulness, the record indicates that Dr. Wesson testified that he did "not remember receiving the letter"

---

[13]"A third party is deemed to have understood the defamatory nature of a statement if a reasonable person would have understood the statement under the circumstances." *In re Perry*, 423 B.R. 215, 267 (Bankr. S.D. Tex. 2010) (citing *Marshall Fields Stores, Inc. v. Gardiner,* 859 S.W.2d 391, 396 (Tex.App.--Houston [1st Dist.] 1993, writ dism'd w.o.j.)). A finding that a statement is defamatory *per se* subsumes the need for such a determination. *See Leyendecker,* 683 S.W.2d at 374.

although he "remembered the issues." Further, in addition to being listed as a recipient of Hancock's letter on its second page, Dr. Wesson appeared very familiar with the letter's contents in subsequent e-mails between Dr. Wesson, Variyam, and other Texas Tech officials in January 2006 and testified that he recalled consulting with Variyam on Hancock's letter and its potential harm to the application for reinstatement.[14] Although Dr. Wesson may not have had an opinion on Variyam's reputation for truthfulness, he testified that, from his personal interactions with Variyam, he found Variyam to be a truthful person and disagreed with Hancock's statements that Variyam had a "reputation for lack of veracity," "deals in half truths," and his "ethical behavior should be challenged." He indicated that anyone from the University Medical Center, Physician Network Services or any physician who complained of having personality issues with Variyam never complained that Variyam was untruthful or dishonest.

Hancock's citation to *Exxon Mobil Corp., supra*, is also unavailing. The portions of *Exxon Mobil Corp.* cited by Hancock were relevant only to the *Exxon Mobil C*ourt's analysis of whether there was sufficient evidence to support the plaintiff's award of damages for mental anguish, not injury to reputation. *Exxon Mobil Corp.*, 252 S.W.3d at 505 n.10. Moreover, Hancock fails to cite a single case in support of his assertion that, where libel *per se* is found by the trial court, the plaintiff must present independent evidence of injury to his or her reputation.

---

[14]Dr. Wesson testified that the effect of Hancock's letter on the pending reinstatement application with ACGME to reinstate the Fellowship Program would have been negative.

Accordingly, we find the evidence is legally and factually sufficient to support the jury's award of $60,000 in damages for past and future injury to Variyam's reputation as a result of Hancock's letter.

### Causation--Self-Publication

Hancock next asserts that, because Variyam self-published Hancock's statements a week after Hancock published the statements,[15] Variyam can recover no damages because he suffered no harm or the trial court should have issued a charge that sought a jury determination of proportionate fault, i.e., did Variyam cause some of his damages due to self-publication. In support he cites the cases of *Doe v. SmithKline Beecham Corp.*, 855 S.W.2d 248 (Tex.App.--Austin 1993), *aff'd as modified,* 903 S.W.2d 347 (Tex. 1995) and *Glenn v. Gidel*, 496 S.W.2d 692, 698 (Tex.Civ.App.-- Amarillo 1973, no writ).

In *Doe*, an employment applicant, Doe, asserted that SmithKline libeled or slandered her by placing her in a situation in which she felt obligated to disclose to other prospective employers the circumstances of a drug test and the revocation of SmithKline's offer of employment. *Doe,* 855 S.W.2d at 259-260. She did not allege that SmithKline published the defamatory statement. *Id.* The *Doe* Court affirmed summary judgment in favor of the defendant on the defamation claim because there was no

---

[15]Hancock refers to a letter sent January 9, 2006, by Variyam to Hancock wherein Variyam references the defamatory statements made in Hancock's letter and requests that he make a retraction in the form of a written letter addressed to all the recipients of Hancock's January 2nd letter. With the exception of ACGME, Variyam's letter copied only the recipients of Hancock's letter, Dean Bernard Mittemeyer, Dr. Donald Wesson, and Dr. David Hodges. Thus, Hancock had already published his libelous statements to the recipients of Variyam's letter at least a week before they received a copy of Variyam's letter.

indication that Doe was compelled by law or other authority to report the alleged defamatory statement made by SmithKline. *Id.* at 259. In so doing, the *Doe* Court relied on the rule of law espoused in *Lyle v. Waddle*, 144 Tex. 90, 188 S.W.2d 770 (Tex. 1944), that "if the publication of which plaintiff complains was consented to, authorized, invited or procured by plaintiff, he cannot recover for injuries sustained by reason of the publication." *Id.* at 772.

Here, the circumstances are quite dissimilar. First, the trial court determined that Hancock's statements represented libel *per se*. Hence, there was no need to show Hancock's statements proximately caused the injury to Variyam's reputation or mental anguish. *See Fox,* 98 S.W.3d at 726. Secondly, the jury was specifically asked to limit his damages to those damages "caused by the January 2, 2006 letter" from Hancock to Variyam's superiors and ACGME. Finally, there was no evidence at trial that Variyam "consented to, authorized, invited or procured" Hancock's publication.

Neither does *Glenn v. Gidel*, *supra*, have any application here. On appeal it was determined that the trial court properly instructed a verdict favorable to all defendants where the record was devoid of any evidence that the alleged defamatory statement was overheard or communicated to a third party. *Glenn,* 496 S.W.2d at 698. In the absence of evidence of publication, the *Glenn* Court held the alleged defamation is not actionable citing the rule in *Lyle, supra*. Here, there was ample evidence of the publication of Hancock's letter before Variyam sought a retraction.[16]

---

[16]The evidence at trial showed that, in addition to the addressees of Hancock's letter, some form of publication of the letter's contents was made to Dr. Eugene Dabezies, then Chairman of the Orthopedic Surgery Department at Texas Tech. He testified at trial that he heard of a controversy in the

23

To resolve what Hancock asserts to be equal inferences that Variyam's injury resulted from his own self-publication rather than Hancock's publication, he asserts the trial court should have issued a jury instruction which proportioned fault between Variyam and Hancock, i.e., asked the jury whether Variyam's injuries were caused by Hancock's publication or Variyam's publication. A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection to the trial court. *See Wilgus v. Bond*, 730 S.W.2d 670, 672 (Tex. 1990). Here, the trial court was given no opportunity to correct the error Hancock now asserts. Hancock failed to state such an objection clearly designating the error and explaining the grounds for the complaint. See *Wilgus*, 730 S.W.2d at 672. As a result, any complaint as to a question, definition, or instruction, on account of the alleged defect or omission concerning submission of the issue to the jury was waived. *See* Tex. R. Civ. P. 275; *Kirkpatrick v. Memorial Hosp.*, 862 S.W.2d 762, 769 (Tex.App.--Dallas 1993, writ denied); *Borden, Inc. v. Rios*, 850 S.W.2d 821, 826 (Tex.App.--Corpus Christi 1993, no writ).

**Exemplary Damages**

In reviewing whether an exemplary damages award is constitutional, we consider three "guideposts": (1) the nature of the defendant's conduct, (2) the ratio between exemplary and compensatory damages, and (3) the size of civil penalties in comparable cases. *Tony Gullo Motors I. L.P. v. Chapa*, 212 S.W.3d 299, 308 (Tex. 2006) (citing

---

Gastroenterology Department involving an allegation that Variyam had a reputation for not being truthful, but it didn't make sense to him. To the contrary, Dr. Dabezies testified at trial that Variyam "was a truthful person," "well respected in the medical community as a person to take care of patients" and "a scholar."

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003)).  The reprehensibility of Hancock's conduct (the most important of these guideposts); *id.* (quoting *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 575, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)), depends in turn on five more factors, i.e., whether Hancock's conduct (1) caused physical rather than economic harm, (2) threatened the health or safety of others, (3) threatened someone who had financial vulnerability (4) involved repeated action rather than an isolated incident, and (5) the harm resulted from intentional malice, trickery, or deceit as opposed to mere accident. *Bennett v. Reynolds,* 315 S.W.3d 867, 874 (Tex. 2010) (citing *State Farm*, 538 U.S. at 419).[17]

We find that the exemplary damages awarded to Variyam were not excessive because the ratio of general damages to exemplary damages was less than 1 to 1; *see Bennett,* 315 S.W.3d at 877 ("an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety") (quoting *State Farm,* 538 U.S. at 425), and we have two *Bennett* factors present that establish the reprehensibility of Hancock's conduct, i.e., his defamatory statements were sent to multiple recipients, and his conduct was the result of intentional malice. *Compare Tony Gullo Motors I. L.P.*, 212 S.W.3d at 308-09 (exemplary damages push the constitutional limits where the ratio between general/economic and exemplary

---

[17]Because we have determined Variyam is entitled to recover damages for injury to reputation and mental anguish, we need not consider Hancock's argument that Variyam is entitled to no exemplary damages because he did not recover actual damages.  Under Texas law, generally, the recovery of actual damages is a prerequisite to the receipt of exemplary damages.  *Nabours v. Longview Savings & Loan Association*, 700 S.W.2d 901, 903 (Tex. 1985).

damages is 4.33 to 1 and only one factor of five factors analyzed in *BMW of North America, Inc.,* 517 U.S. 559, is present).

Hancock's wrongful conduct involved the simultaneous publication of his defamatory statements to two of Variyam's superiors, a colleague and ACGME. His conduct was also "the result of intentional malice rather than mere accident." *Bennett,* 315 S.W.3d at 878. Hancock testified at trial that he wrote the letter when he was extremely angry about his dispute with Variyam related to patient transfers. He knew the status of the ACGME application and was aware that his letter would be seen by people at ACGME including physicians from across the country. His letter violated the established protocol at Texas Tech for communication with ACGME[18] and he was aware his statements that Variyam had "a reputation for lack of truthfulness" could have a "very, very serious effect on [Variyam's] character." If the letters were not true, as subsequently found by the jury, he testified he was "basically assassinating Variyam's character." From this evidence, the jury could infer that Hancock not only intended to injure Variyam's prospects with his present employer, Texas Tech, but possible future prospects of employment by sending the letter to ACGME, an independent organization that accredits all institutions where medical training takes place nationwide.[19]

---

[18]Dr. Surendra Varma, Associate Dean for Graduate Medical Education and Chair of the Graduate Medical Education Committee at Texas Tech, testified that it was inappropriate for anyone to communicate directly with ACGME unless they were the Program Director, Variyam, or the Designated Information Officer, Jim Watters. In addition, he testified it was an ACGME requirement that all correspondence with ACGME go through the Graduate Medical Education Committee.

[19]The fact that Hancock unnecessarily mailed an additional copy of the letter to ACGME reflects a malicious intent. *Leyendecker*, 683 S.W.2d at 375.

In addition, the exemplary damages award is comparable in size to other defamation cases. *See Clark*, 248 S.W.3d at 427 (jury awarded $100,000 in exemplary damages each against two defendants for libel *per se*); *Bunton v. Bentley*, 176 S.W.3d 21, 23 (Tex.App.--Tyler 2005, pet. denied), *cert. denied,* 547 U.S. 1013, 126 S.Ct. 1476, 164 L.Ed.2d 266 (2006) ($1,000,000 exemplary damages award reasonable in defamation case); *Bradbury,* 788 S.W.2d at 39 ($50,000 punitive damages award in libel *per se* case not excessive); *Bolling,* 671 S.W.2d at 572 ($60,000 punitive damages award in slander *per se* case not excessive). Accordingly, issue two is overruled.

## Issue Three - Anonymous Letter

Hancock next asserts the trial court erred in admitting testimony of the existence of an anonymous letter mailed nearly two weeks after Hancock's January 2nd letter that complained to ACGME about the Fellowship Program. Hancock asserts the testimony was irrelevant; *see* Tex. R. Evid. 402, and the original writing was required to prove the content of the anonymous letter. *See* Tex. R. Evid. 1002.

Evidentiary rulings admitting or excluding evidence are committed to the trial court's sound discretion; *Bay Area Healthcare Group, LTD. v. McShane,* 239 S.W.3d 231, 234 (Tex. 2007); *American Protection Ins. Co. v. Johnson,* 171 S.W.3d 921, 923 (Tex.App.--Amarillo 2005, no pet.), and, even if a trial court errs by improperly admitting evidence, reversal is warranted only if the error probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1; *Owens-Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex. 1998). Further, we review the entire record and require the complaining party to demonstrate that the judgment turns on the particular

27

evidence admitted. *Bay Area Healthcare Group, LTD.*, 239 S.W.3d at 234. *See Allen v. Creditwatch Services, LLC,* 236 S.W.3d 315, 324 (Tex.App.--Corpus Christi 2007, pet. denied ) ("complaining party must usually show that the whole case turned on the evidence at issue").

Hancock asserts the trial court should have excluded any and all evidence of the anonymous letter sent to ACGME.[20]  At trial, Variyam acknowledged, when testifying about the continuing process related to the ACGME reinstatement application, that ACGME had received a letter "from an anonymous source" and he wrote a letter "basically [responding] to the anonymous complaints" received by ACGME against Drs. Farooq and Parupudi.  Variyam's letter to ACGME, admitted as an exhibit, referenced an "unnamed complainant" and summarized the anonymous complaints made against Drs. Farooq and Parupudi in a single paragraph.  The remainder of Variyam's five-page letter addressed the qualifications and actions of Drs. Farooq and Parupudi, and Variyam's efforts to assure ACGME that the Fellowship Program had sufficient key clinical faculty to maintain the program.  In the second to last paragraph, the letter stated that "[w]e suspect that the complaint came from a disgruntled person who has some, but incomplete knowledge of our division."  Dr. Hancock's name was not mentioned in connection with Variyam's testimony regarding the anonymous letter sent to ACGME.

---

[20]We note that record references to an anonymous letter represented isolated statements contained in four pages out of over five hundred thirty pages of testimony over a three day trial.  Further, Variyam's counsel did not mention the anonymous letter in either his opening or closing statements.

Without specifically stating how the case, or any material issue, turned on this particular evidence, Hancock simply asserts that this testimony caused the rendition of an improper judgment because the jury was permitted to *speculate* whether Hancock authored the anonymous letter. Because Hancock's statements in his January 2nd letter were found by the trial court to be libel *per se*, the anonymous letter was wholly irrelevant to the issue of whether Hancock's prior letter defamed Variyam. *See Allen*, 236 S.W.3d at 324. Furthermore, Variyam's responsive letter indicates that the anonymous complainant was someone other than Hancock who, from the record, appeared to have complete knowledge of the Gastroenterology Division. Accordingly, we find that, even if the trial court erred in admitting evidence of the anonymous letter, any error was harmless. *See Shearson Lehman*, 806 S.W.2d at 927 (admission of anonymous letter harmless error in defamation case where letter did not refer to a matter dispositive of the case and did not establish that the defendant was attempting to damage the plaintiff's reputation). Hancock's third issue is overruled.

## Conclusion

The trial court's judgment is affirmed.


Patrick A. Pirtle
Justice

Quinn, C.J., not participating.

29